Donahue v. Mills.

## DONAHUE v. MILLS.

1. DEED: *Acknowledgment.*

The following acknowledgment held sufficient:

STATE OF ARKANSAS, }
PULASKI COUNTY. }

On this, the nineteenth day of May, 1877, before me, J. L. Bay, a no-- tary public in and for said county, personally appeared Theodore B. Mills and Hannah A. Mills, his wife, grantors in the foregoing deed of conveyance, to me well known, who acknowledge that he had ex-- ecuted the same for the consideration and purposes mentioned. And on this day voluntarily appeared before me —— ——, to me well known as the person whose name appears upon the within and fore- going deed, and in the absence —— —— said husband declared that —— had of her own free will executed the foregoing deed for the purposes therein contained and set forth, and that she relinquishes her dower in and to the property conveyed freely and without com- pulsion or undue influence of her husband."

Witness, etc: (Signed and sealed by the notary.)

2. SAME: *By married woman, when certificate of, conclusive.*

A married woman may show against all the world that she never made any acknowledgment at all of the execution of a deed, and that the certificate of acknowledgment is a forgery or entire fabrication of the officer; but if she actually made some kind of acknowledgment before an officer qualified to take it, his certificate will be conclusive as to the terms of the acknowledgment and the concomitant circum- stances, in favor of all persons, who, themselves innocent of fraud or of collusion to deceive or influence her, have taken the instrument on faith of the certificate.

3. SAME: *Same: Under Constitution of 1874.*

Since the adoption of the Constitution of 1874, no acknowledgment by a married woman of her deed of conveyance of her separate property is necessary.

APPEAL from *Pulaski* chancery court.

Hon. D. W. CARROLL, Chancellor.

*J. M. Moore* for appellant.

The money lent by Donahue was advanced to take up a. mortgage executed by appellees to E. W. Parker & Co.

Donahue v. Mills.

If the security taken by Donahue fails he is entitled to be subrogated to the security held by Parker & Co. *1 Jones on Mort.*, sec. *874 et seq.*;· *64 N. Y.*, *397, 401; 32 Ark., 258.*

A separate acknowledgment by a married woman ·is not required by our statute and constitution. They may convey as *femes sole.* *2 Bishop on Mar. Women*, sec. *199, 244, et seq.*

If the constitution and statutes confer a separate estate, it is subject, in equity, to the incidents and the powers of the wife usual under the ancient equity system in such ·estates, and the wife might create a charge on it for the ben-·efit of the estate without her husband joining or the formalities required by the statute. *2 Bish. on Mar. Women*, secs. *245, 246.*

Mills was the implied agent of his wife in borrowing the money, and she is bound by his acts, having obtained it to pay off a prior mortgage, and never having offered to return it. *2 Bish. on Mar. Women*, secs. *383, 395, et seq. 406 and cases cited.*

Mills has curtesy in the mortgaged premises, and to that extent it can be sold. *2 Bish. on Mar. Women*, sec. *142 et seq.*; *Coleman v. Satterfield, 2 Head. (Tenn.), 259.*

*Compton, Battle & Compton* for appellee, Hannah Mills.

Mrs. Mills was a competent witness. *37 Ark., 302; 33 Ib., 611.*

The deed of trust was not acknowledged by Mrs. Mills. The notary's certificate does not show that Mrs. Mills made any acknowledgment. It was executed by Mrs. Mills under threats, compulsion and undue influence of her husband, and was procured by fraud, and was void as to her. The acknowledgment, if any, was taken in the presence of her husband, and at his command, and was not her own free and voluntary act and deed.

The certificate to the last deed shows that T. B. Mills only acknowledged it, and this was *a circumstance sufficient to put appellant on enquiry.* He cannot claim to be an innocent party without notice. *37 Ark., 383 ; 1 Smith, Pa., 309 ; 4 Harris, 532 ; 3 Casey, 25.*

Appellant was a stranger and a volunteer as to Mrs. Mills, and not entitled to be subrogated to the rights of the beneficiary in the first deed of trust. *25 Ark., 129 ; 3 Paige. 117; 14 N. J. Eq., 234 ; 5 Rob. La., 204; 16 Cal., 195 ; 37 Ill., 338 ; 37 Mich., 32.* Besides, it was satisfied on the record. *Sec. 4,290 Gantt's Dig.*

A deed executed under duress or coercion is void as to every person. *10 Minn., 448; 18 Md., 305 ; 56 N. Y., 465.*

EAKIN, J. Appellant brought this suit in equity to foreclose a deed of trust, alleged to have been executed by Theodore B. Mills and his wife, to secure the payment to complainant of a note for $2,000. The trustee is also made a party. The grounds of the suit, in short, are that Mills and wife had executed a note to E. W. Parker & Co. on the twenty-second of August, 1876, for the sum of $2,000, payable with interest, at six months, and, to secure it, had given a deed of trust upon a certain house and lot in Little Rock, the property of the wife. That Parker & Co., having demanded payment, the defendants procured the money from complainant Donahue to take up the note, and gave him their joint promissory note for the same amount, bearing interest ; and at the same time executed to a trustee a deed of trust on the same property to secure it. Both notes and both deeds of trust are exhibited, which are alleged to have been duly executed and acknowledged by Mills and wife. There is a prayer for foreclosure of the last trust deed ; and also by supplemental or amended bill, filed after answer, a prayer that, if the second deed of trust should be held

invalid for defect or irregularity, the complainant may be subrogated to the rights of the beneficiary under the first deed. There was due service on all the parties, and, after pleadings and proof, the chancellor on hearing held the second deed of trust void as to Mrs. Mills for want of due execution and acknowledgment; and that the first deed of trust had been satisfied so that complainant was not entitled to subrogation. All relief, directly against her, was refused. A personal decree, however, was rendered against the husband for the debt, and it was further held that he was entitled to curtesy in the property, now inchoate, but subject to the lien of the trust. An order for the sale of this curtesy was made, to convey an interest to vest in the purchaser on the death of the wife, in case the husband should survive, and to continue during his life. Donahue appealed, and Mrs. Mills on her part took a cross-appeal on account of the embarrassment which the execution of the decree would create in her power to dispose of the property. Mills, the husband, acquiesces.

Amongst other defenses that of usury was set up. Of that it is enough to say that it was sustained by no proof.

The material grounds of her defense were that the property belonged to her separately; that she did not execute the first deed voluntarily, but was led and impelled thereto by the fraud and undue influence of her husband. As to the second note she denied that she executed it at all. She admitted that she signed the second deed of trust, but alleged that it was by the compulsion and undue influence of her husband, who used violent language, and threatened the abandonment of her and her children unless she should comply. She denied that, in the absence of her husband, she had acknowledged to the notary, who made the certificate that she had executed the trust deed voluntarily, but alleged that she had declared to him in the presence of her husband and other members of the family that, although she

had signed it, she had done so under compulsion and undue influence.

The principal issue in the case is the validity of her acknowledgment of the second trust deed. The certificate of the notary is in full as follows :

> "STATE OF ARKANSAS, ⎰
> COUNTY OF PULASKI. ⎱

"Be it remembered, that on the nineteenth day of May, 1877, in the county aforesaid, before me, J. L. Bay, a notary public, in and for said county, personally appeared Theodore B. Mills and Hannah A. Mills, his wife, grantors in the above deed of conveyance, of full age, to me well known, who acknowledged that he had voluntarily executed and delivered the same for the purposes and considerations mentioned, and desired the same to be so certified.

"And I do further certify that on this day voluntarily appeared before me ——— ——— , to me well known as the person whose name appears upon the within and foregoing deed, and in the absence ——·——·—— said husband declared that —— ——— had of her own free will executed the foregoing deed for the purposes therein contained and set forth, and that she relinquishes her dower in and to the property conveyed freely and without compulsion or undue influence of her husband. Given under my hand and seal,'" etc. [Signed by the notary.]

It is evident that the blanks, which probably were left inadvertently in the use of printed forms, make no obscurity. Only two names were on the deed—one male and one female—Theodore B. and his wife Hannah Mills. They both appeared before the notary. He had certified the husband's acknowledgment. The following one, using feminine pronouns and referring to the name signed to the deed, could by no construction be made to apply to any other person than his wife. Upon its face the certificate is sufficient. Is it conclusive? If not, has it been over-

1. Acknowledgment of deed.

2. SAME: By married woman.

come by proof? These are the vital questions, for it may be said in passing that, if there be a proper acknowledgment, no fraud nor undue influence actually exercised over the wife by the husband can vitiate her conveyance if the grantee be no party to the improper influence and has no knowledge of it.

When certificate of, is conclusive.

It is now the settled doctrine of this court, as laid down in the opinion by CHIEF JUSTICE ENGLISH, in *Meyer v. Gossett*, and we still think the only safe doctrine, that whilst a wife may, against all the world, show that she never made any acknowledgment at all, and that the certificate is either a forgery or an entire fabrication of the officer, yet if she has actually made some kind of acknowledgment before an officer qualified to take it, his certificate will be conclusive as to the terms of the acknowledgment, and the concomitant circumstances, in favor of all persons, who themselves innocent of fraud, or of collusion to deceive or influence her, have taken the instrument on the faith of the certificate. *38 Ark., 377.* The doctrine rests upon public policy. Whilst she, as all other persons are, will be protected against a mere forgery, or the fraudulent machinations of those persons, or their agents, who seek to derive a benefit from their dishonesty; yet if she does appear before the officer and make any acknowledgment with regard to the instrument, he is authorized to give assurance by his certificate, to all innocent persons, of what the terms of the acknowledgment were, and of the fact that it was made on privy examination. To open any wider door for proof would put a vast amount of property adrift. The law prescibes no set terms in which acknowledgments must be formulated. They are orally made. The officer must judge of their meaning and effect. Manner and jesture even, may aid him in that, and he must judge whether the husband is far enough away, to enable him to certify that the examination was privy. Obviously it would not do to

allow the wife herself, or any bystanders, to show, in opposition to the certificate, and to the rights of innocent persons relying upon it, that the language properly construed did not amount to a negation of undue influence, or confess free and voluntary action; or that her husband was actually so close at hand as to be able to influence her representations or responses. Human memory is too unreliable for that, even if there were not still greater dangers from human caprice, and the bias of human interests. The public must be reasonably protected in the confidence which it is compelled to extend to official action.

- Mrs. Mills in her answer admits that she *signed* the deed of trust to Reeve, the one now in question, but says she executed it under threats of desertion. and the pressure of harsh and offensive language. She was well advised of its purport and effect, for she says she first refused to sign it, because the property was her own, and all the house they had for herself and their two minor children, and she was unwilling to part with, or encumber it. She says that Mills brought the notary to their residence to take her acknowledgment, but denies that in his presence and in the absence of her husband, she declared that she had executed it for the purposes therein contained, of her own free will, and without compulsion or undue influence of her husband; but says that she did declare, in the presence of the notary and her husband, and "other members of the family," that, although she had signed the trust deed, she had not, and would not do so voluntarily and freely, but had done so under compulsion and undue influence of her husband against her own free will and consent.

In her deposition, which being in her own behalf, was properly admitted, she says, with regard to this second trust deed, that she signed it in the presence of the notary but did not know what it was about. It occurred in a room

about twenty feet square.    When she signed, she says, Mr..
Mills stood near the desk, and there were no persons in the
room but herself, Mr. Mills and the notary, and that her
husband remained in the room until the notary left.    She
said she had no conversation whatever with the notary in
the absence of her husband and beyond his hearing ; that he
did not read the trust deed to her, nor did she read it her--
self.    She does not think any explanation of its contents
was made to her by anyone.    She says she knew nothing of
the said trust deed until the month of June, 1879 ; that her
husband was in the real estate business, in the course of
which it was often necessary for her to acknowledge con--
veyances.

The notary, with regard to the trust deed in suit, says
that he took the acknowledgment of Mrs. Mills in one end
of the long parlor.    The husband was in the room, in the
other end, in a corner, with his back turned.    He does not
recollect that Mrs. Mills stated to him whether or not she
executed the instrument freely and without compulsion, but
says it was always his custom to put the usual questions
required by law, and that he has no reason to believe that
he made an exception in this case.    He remembers no
irregularity connected with the acknowledgment, nor any
objection made by her.    She came into the room with her
husband.    The notary observed nothing like compulsion,
and does not remember her saying anything except "yes" or
"no" in response to his enquiries.    He does not remember
whether Mrs. Mills *signed* in his presence or not.

We lay little stress upon the apparent discrepancy
between the answer and the deposition of Mrs. Mills.    The
answer was doubtless drawn by her attorney, and he, in
drawing it, and she, in adopting it, might well have con--
fused the time of events and conversations.    It is quite
probable indeed that Mrs. Mills, with her husband, and in
the presence of her children, had earnestly protested and

pleaded against the encumbrance of the house ; and for the protection of the last shelter for herself and children, against the desertion which she foresaw might come, and which did after all.   Her deposition must be taken as her deliberate statement of the occurrences at the time of the alleged acknowledgment.

Doubtless, undue influence, of the most reprehensible character, had been brought to bear upon this unfortunate wife—such as no ordinary woman would be able to resist. But the preponderence of the proof, in connection with the notary's certificate, is still in favor of the supposition that either by words or gesture she gave the notary to understand that she assented to all that the law required to make it valid.   It is indisputable that she acknowledged the signature, the contest being only as to the expression of her free will.   The husband was in the room, but it was a matter for the notary to determine, in the first instance, whether or not he was near enough to be considered present. This court held in *Meyer v. Gossett, supra*, that it was not necessary for the husband to be out of sight.   That was a stronger case of the presence of the husband than this.   The wife's acknowledgment was made on horseback, and the husband was near her on another horse only six or eight feet away.   In that case, too, the wife denied positively that the officer asked her any questions, or that she made any acknowledgment, and so testified.   This court, in that case, sustained the deed on the grounds that neither the trustee nor the beneficiary had any knowledge of, or participation in, any fraud which might have been perpetrated. We think the case of *Meyer v. Gossett*, in accord with the best authorities, and that we cannot set aside this trust deed without overruling it.

I may be excused the individual remark, that it is a matter of infinite regret that no system has yet been devised, either here or in England, by which property may be set-

tled to the use of a married woman in such manner as to enable her to have the beneficial use of it without being subject, as remarked by an eminent English chancellor, to have it kissed out of her by an improvident husband, or kicked out of her by a brutal one. But marital influences are too secret and subtile to be eluded by law, and the happiness of women is too much dependent upon the kindness, affection and protection of the husband to enable her to resist them. But such, as yet, is the imperfection of the law, and the time has passed when chancellors may, in each individual case, act upon their innate sense of justice. They must act upon general principles, established by precedent, or in new cases in analogy with them. I have no hesitation in adding that in the brief of Mrs. Mills' attorney, and out of it, I have carefully sought some sound principle which, without violation of all authorities on the subject, might enable me to declare this wretchedly extorted deed of trust invalid. But the court is of opinion that it cannot be done, whilst the facts show an actual appearance before the officer and some sort of acknowledgment, where the certificate shows that the acknowledgment was proper, and the facts show that both the trustee and the beneficiary are wholly clear of any participation in the fraud or coercion, and that the latter gave full consideration, in good faith, without anything to excite his suspicion or put him on inquiry. The blanks in the certificate cannot reasonably be considered to have that effect. They are so obviously the result of carelessness in filling up a previously prepared form, that to hold them to be a device to make the instrument, by a strained construction, speak otherwise than according to its obvious intent, would be absurd. Not a man in a thousand would suspect a notary of having done that. Until the legislature may impose upon those who lend money, or do anything else upon the faith of a married woman's security, the primary duty of personal inquiry as to her free will, the law

must be administered even as it has been established.

The court holds, upon the appeal of Donahue, that there was error in refusing a foreclosure of the interests of all the parties in the lots.

This disposes of the appeal of Mrs. Mills which, in any view of the case, could not have been successful. The property was either her separate estate, or it was not. If the husbands marital rights were excluded by the terms under which she held, then her acknowledgment under the constitution of 1874 was unnecessary. There was no denial of the execution of the deed by signature, nor any proof of fraud on the part of Donahoe. If, on the other hand, it were not separate property, then the husband's curtesy was bound and the decree was as favorable to her as she could ask. The determination, however, of Donahue's appeal, renders it unnecessary for us to determine the exact status of the property. It can only affect the disposition of the residue which will be under the control of the chancellor.

Reverse and remand with directions to decree a foreclosure in accordance with this opinion, and for further proceedings, in accordance with the principles of equity and the practice in chancery.