. PUGH v. STIGLER.

No. 851, Ind. T.    Opinion Filed September 9, 1908.

(97 Pac. 566.)

1.    JUDGMENT—On Pleadings—Insufficient Cross-Complaint. Where
the allegations of the complaint as amended are admitted in
the answer, and affirmative matter pleaded, and the same filed
as an answer and cross-complaint, on a motion for judgment
on the pleadings, the same should be rendered for plaintiff, if
the allegations of the cross-complaint are insufficient to sustain
a judgment for defendant.

2.    VENDOR AND PURCHASER — Action for Price — Defenses —
Rescission. A vendee, having a bond for title and in possession
of the land, may resist the payment of the purchase money
when the title of the vendor has failed, but must, in order to
avail himself of that defense, offer to rescind and restore the
premises to the vendor.

(Syllabus by the Court.)

*Error from the United States Court for the Central District of
the Indian Territory, at Poteau; W. H. H. Clayton, Judge.*

Action by J. S. Stigler against W. A. Pugh. Judgment for
plaintiff. Defendant brings error. Affirmed.

On October 5, 1905, J. S. Stigler, defendant in error, plain-
tiff below, sued W. A. Pugh, plaintiff in error, defendant below,
in the United States Court in the Indian Territory, Central Dis-
trict, at Poteau, to recover a balance of $300, with interest, al-
leged to be due as purchase money on a sale of land. On April
27, 1906, defendant in error, hereafter called "plaintiff," filed an
amended complaint stating, in substance, that he and plaintiff in

error, hereafter called "defendant," were residents of the Central district of the Indian Territory; that on August 19, 1904, defendant purchased of the Midland Valley Land Company certain lots situated in the town of Stigler, Ind. T., to wit, lots Nos. 21, and 22, in block No. 126, agreeing to pay therefor the sum of $600, paying thereon $300, and agreeing to pay the remaining $300 within one year, with 8 per cent. interest from date; that the contract was in writing, a copy of which was filed with the complaint, marked "Exhibit A," which is in effect a bond for title, in which it is stipulated that the Midland Valley Land Company retains the title to the property and a lien upon all the buildings and improvements put on the property by the grantee or his assigns until all the deferred payments are made, after which he agrees to deliver to the grantee, or his assigns, a warranty deed to the property. The complaint further states that the lots were a part of the homestead allotment of Ellis Jefferson, deceased, and were conveyed for a valuable consideration by the adult heirs of Ellis Jefferson to J. W. McCloud, and from him to the Midland Valley Land Company; that it on the 15th day of May, 1905, conveyed to plaintiff all its right, title, and interest in the property, and that defendant has been in possession ever since the execution of the bond; that since the maturity of the bond a warranty deed conveying the property has been tendered the defendant; that he has failed and refused to make the remaining payment—and prays for a judgment for $300 against him and that the same be declared a lien on the lots. On February 2, 1906, defendant filed answer and cross-complaint, and a motion to transfer the case to the equity docket. On October 27, 1906, after a good deal of pleading not necessary here to mention, plaintiff filed a motion for judgment on the pleadings, which was sustained by the court, and on January 28, 1907, judgment was rendered in favor of plaintiff and against defendant for $358.60, principal and interest on the contract sued on, together with costs, from which judgment defendant sued out a writ of error in the United States Court of Appeals for the Indian Ter-

ritory, and the same is now before us for review as the successor of that court by virtue of the terms of the Enabling Act.

*Foster & Dalton* and *Rosser & Varner,* for plaintiff in error.
*Fannin & Beckett* and *Stuart & Gordon,* for defendant in error.

TURNER, J. (after stating the facts as above). As in his answer and in open court defendant specifically admits the allegations set forth in the complaint, it only remains for us to determine whether the answer states facts sufficient to constitute a cross-complaint. By way of cross-complaint, defendant in substance alleges that in making the contract he relied upon the opinion of W. C. Wells, vice president of the company, and upon the opinion of Hon. Charles B. Stuart, as to the validity of the title contracted to be conveyed, which they represented to be good, and which he says was "doubtless" well known to them to be "doubtful, and which would require a deduction from the intrinsic market value of the property to induce an ordinary prudent person to buy"; that the facts with reference to said title are that it was allotted to Ellis Jefferson, deceased, a duly enrolled Choctaw Indian by blood, and was commonly called a "dead claim"; that the restrictions upon the alienation of said land had never been removed from any of the heirs of said Ellis Jefferson, who were full-blood members of said tribe; that no patent had issued in the name of said Ellis Jefferson; and that he was advised that the Midland Valley Land Company had no title, and could convey none, and that it is insolvent. He admits that since the execution and delivery of the bond for title he has been in possession of the property, and states that before he was advised of the doubtful state of the title he erected buildings and other valuable improvements on said land of the value of $2,500; that he is ready and willing to pay the sum sued for as soon as the Midland Valley Land Company "conveys to him a good and merchantable title to said lands," and unless it does he has sustained damages in the sum of $2,800

for its failure so to do as agreed—and prays that the cause be transferred to the equity docket, and that the company be made a party to the suit and "compelled to remove all incumbrances and question and doubt from its title to said property by the proper and necessary actions and suits, so that it can convey a clear and undisputable title"; and he further prays that, if it fails to do so, this contract be rescinded, and for judgment against the Midland Valley Land Company for $2,800 for "breach of contract," and that the judgment be declared a lien upon the land, and for costs.

It will be observed that the cross-complaint discloses a prayer for a rescission of the contract upon the ground that the vendor had no title to convey; but the vendee makes no offer to restore the premises to the vendor. Therefore judgment should be rendered on this pleading in favor of the plaintiff, if its allegations are insufficient to sustain a judgment for the defendant. 11 Enc. Plead. & Prac. 1033. In other words, as stated on page 1046 of the the same work: "A motion for judgment on the pleadings is in the nature of a demurrer, which it closely resembles, and admits for its purposes the truth of all the facts well pleaded by the opposite party." The question, then, for us to determine, is whether or not the vendee, holding under a bond for title, can make defense that the vendor has no title to convey without offering to restore the premises to the vendor. We think not. The rule is well settled, as laid down in 2 Warvelle on Vendors, § 869, that:

"As has been shown, it is a fundamental principle in this branch of the law that a rescission contemplates, as far as possible, a complete restoration of the parties to the positions they respectively occupied prior to entering into the engagement. Indeed, this is ordinarily the indispensable condition to the granting of the relief. * * * "

In *Lewis and Wife v. Boskins, Administrator, etc.*, 27 Ark. 61, the court held, in effect, that where land was sold on credit and a bond given to make title on the payment of the purchase

money, the effect of the contract was to create a mortgage, and that the purchaser entering into possession under such contract, so long as he retains possession, cannot deny his vendor's title and that, if the vendor is unable to convey the title and the vendee would rescind the contract, he must restore the possession to the vendor; citing in support of this doctrine *Pintard v. Goodloe,* Hemp. 502, Fed. Cas. No. 11,171, *Weathersby v. Wilson,* 1 Nott & McC. (S. C.) 373, and *Willison v. Watkins,* 3 Pet. 43, 7. L. Ed. 596, and *Thredgill v. Pintard,* 12 How. 24, 13 L. Ed. 877. See, also, in support of this doctrine, *Benjamin et al. v. Hobbs,* 31 Ark. 151.

In *Johnson v. Douglass,* 60 Ark. 39, 28 S. W. 515, the court say:

"The fact that the vendee, having a bond for title, is in possession of the land, will not prevent him from resisting the payment of the purchase money when the title of the vendor has failed; but he must, in order to avail himself of this defense, offer to rescind and restore the premises to the vendor"—citing *Yeates v. Pryor,* 11 Ark. 58; *Lewis v. Davis,* 21 Ark. 239; *Harvey v. Morris,* 63 Mo. 475.

In 18 Enc. Pleading and Practice, 829, is laid down the general doctrine that:

"In suits for the rescission and cancellation of contracts the court applies the familiar maxim of equity, of almost universal application, that he who seeks equity must do equity. The plaintiff will not be permitted to repudiate his contract and still retain the benefits which he has derived from it, and his desire and willingness to restore what he has received must appear in the bill or complaint; otherwise, he will have no standing in a court of equity."

It follows that the court, in rendering judgment on the pleadings in favor of plaintiff and against defendant for the balance of the purchase money must be sustained, and the judgment of the lower court affirmed; and it is so ordered.

Dunn and Kane, JJ., concur; Williams, C. J., and Hayes, J., not participating.