ADKINS v. ARNOLD *et al.*

No. 1228. Opinion Filed November 11, 1911.

Rehearing Denied February 6, 1912.

(121 Pac. 186.)

1. HUSBAND AND WIFE—Wife's Real Estate—Conveyances—Effect. Under the laws in force in Indian Territory prior to statehood, a married woman could convey the title to her real estate, the same as if she were single; and where she joins her husband in a deed of her land, and also relinquishes dower, the deed will convey the fee, though she acknowledges only the relinquishment of dower.

2. SAME—Statutory Provisions. Sections 648 and 659 of chapter 27, Mansf. Dig. of Ark., put in force in the Indian Territory by Act of Congress of Feb. 19, 1903, c. 707, 32 U. S. Stat. 841, were, in so far as they affected the conveyance by a married woman of her lands, inconsistent with section 4621, c. 104, of Mansf. Dig. (Ind. T. Ann. St. 1899, sec. 3021), which was in force prior thereto,

Adkins v. Arnold et al.

and to the extent of such inconsistency said sections 648 and 659 were. not in force in Indian Territory prior to statehood.

3.    **SAME—Defective Acknowledgment.** Under the laws in force in Indian Territory prior to statehood, a deed by a married woman of her lands, wherein she joins her husband in the operating words of. grant, but acknowledges relinquishment of dower only, is not sufficiently acknowledged to entitle it to record, but it is sufficient, as between the parties or privies, to convey the fee.

4.    **APPEAL AND ERROR—Appealable Orders—Ruling on Demurrer.** While there are cases in which an appeal will lie without a final judgment, yet when a demurrer to the answer is sustained, and defendant elects to stand on her pleading and refuses to plead further, the plaintiff is entitled on motion to judgment, and there is no error in refusing to suspend the proceedings until defendant could prosecute an appeal.

5.    **PLEADING — Demurrer — Determination.** That an answer contained a general denial did not render it error to sustain a demurrer thereto, where the affirmative averments are inconsistent with the general denial and admit all the allegations of the petition in so far as they are material, in the event the court finds the law contrary to defendant's assertion of it and that the deed defendant admits executing did, in law, pass title to the lands.

(Syllabus by Brewer, C.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by Henry C. Arnold and others against Martha Adkins and others. Judgment for plaintiffs, and defendant Adkins brings error. Affirmed.

*Lewis C. Lawson* and *Crump & Rogers,* for plaintiff in error.

*Osborn A. Morton,* for defendants in error.

Opinion by BREWER, C. This suit was tried in the district court of Hughes county, Okla., and is here for review of the action of the trial court in sustaining a demurrer to the answer and cross-petition of plaintiff in error.

The facts are substantially as follows: Henry C. Arnold, one of the defendants in error, as plaintiff below, brought suit on note and to foreclose a mortgage on the N. ½ of the S. E. ¼, section 13, township 8 N., range 9 E., Hughes county, Okla., against Jake F. Arnold as mortgagor. The Richardson Dry

Goods Company, W. B. Adkins, and Martha Adkins, the plaintiffs in error, were made defendants below. The defendant Jake F. Arnold, the Dry Goods Company, and W. B. Adkins defaulted and filed no pleadings in the case, and final judgment was rendered against them, on account of which no complaint is made. The allegations of the petition brought Martha Adkins into the case by the lollowing averments:

"(6) That the said defendants, Martha Adkins, W. B. Adkins, and the Richardson Dry Goods Company, have, or claim to have, some interest in or lien on the said mortgaged premises, which, if any, accrued since the lien of the said mortgage."

The defendant Martha Adkins, plaintiff in error here, alone appeared and filed pleadings. The defendant Jake F. Arnold is made defendant in error, but alleges no error, and neither he nor the Richardson Dry Goods Company will be further considered. Hereafter for convenience the plaintiff in error will be called defendant, and defendant in error plaintiff.

The defendant Martha Adkins appeared in the case and filed an answer consisting of a general denial and cross-petition praying for affirmative relief. A demurrer to this plea was sustained, she amended, another demurrer was sustained, and she again amended, and upon the sustaining of a demurrer to her final amended plea she refused to further plead. She asked that proceedings be suspended, pending an appeal to this court. This suspension of proceedings was denied, and judgment on the pleadings was entered. For her cross-petition the defendant alleged, in substance, that she was the owner of, in her own right, as her sole and separate estate, the lands in controversy. She alleged facts to show her title originally, but, as the fact that at a certain date she was the owner is not in issue, these facts are not material. She alleged that she and her codefendant, W. B. Adkins, were, and had been for many years, husband and wife; that prior to February 23, 1907, the date of the mortgage, she and her husband executed a certain deed to Jake F. Arnold, the mortgagor, concerning the lands in suit. She sets up this deed and its acknowledgment in full as part of her cross-petition.

She alleges she signed the deed as the wife of said codefendant; that by its terms it shows she merely relinquished dower in the lands. She alleges that, her husband having no interest in the land, his deed conveyed nothing; that her relinquishment of dower in the deed conveyed nothing because she, being the owner of the land, had no rights of dower to convey; that therefore the deed conveyed nothing to Jake F. Arnold, and his mortgage to Henry C. Arnold conveyed nothing; that the deed and mortgage are void and passed no title, etc., and are clouds on her title, etc., and prays for cancellation, etc., and equitable relief.

By sustaining the demurrer to defendant's answer and cross-petition, the court below held that the deed set up in the cross-petition did convey the title to the land to Jake F. Arnold, as a matter of law, and that therefore Jake F. Arnold could make a valid mortgage on the land to the plaintiff. While there are several questions raised in this case, the final rights of the parties will be determined by the construction of the deed and its acknowledgment, as pleaded by defendant.

Before commencing the consideration of this decisive feature of the case, however, we will notice certain questions insisted on by defendant. It is alleged, as error of the court, the refusing to suspend all proceedings, upon sustaining the demurrer, until defendant could prosecute an appeal. While it is true that under the statutes there are cases in which an appeal will lie without a final judgment in the case (*Wesley et al. v. Diamond et al.,* 26 Okla. 170, 109 Pac. 524), yet in this case, when the demurrer was sustained and defendant elected to stand on her pleading, and refused to plead further, she was before the court in default, and the plaintiff was entitled, on motion, to judgment. In *Pugh v. Stigler,* 21 Okla. 854, 97 Pac. 566, it is said:

"Where the allegations of the complaint as amended are admitted in the answer, and affirmative matter pleaded, and the same filed as an answer and cross-complaint, on a motion for judgment on the pleadings, the same should be rendered for plaintiff if the allegations of the cross-complaint are insufficient to sustain a judgment for defendant."

The defendant also urges that the sustaining of the demurrer was error, because her answer contained a general denial. But in this case, while this is true, yet her affirmative averments are inconsistent with the general denial, and admit all the allegations of plaintiff's petition, in so far as they become material to her, in the event the court finds the law contrary to her assertion of it, and that the deed she admits executing did in law pass title to the lands to the mortgagor. The question of the validity of the mortgage as between the parties to the mortgage was not material to her, if, as a matter of law, she had conveyed all her title and estate in the lands, and this is shown by her cross-petition. Her pleading must be considered and construed as a whole, and, when so considered, the court did not commit error in sustaining the demurrer on this ground, if it was correct in its construction of the deed set up, which main question we will now proceed to determine.

To properly determine the questions arising in this case, it is necessary to inquire into and determine the state of the law, in Indian Territory, prior to statehood, relative to the conveyance of real property, and especially of the real property of married women. It is contended in this case that the statute of Arkansas, requiring the husband to join in the deed conveying the wife's land, was in full force, unmodified, as found in section 659 of chapter 27 of Mansfield's Digest; and that, being so in force, a certain line of the decisions of the Supreme Court of that state was brought over with it, and became binding on the courts of Indian Territory. This line of decisions announced, perhaps, the most rigid rules regarding the mode and acknowledgment of conveyances of any of the states, with perhaps the exception of Virginia and West Virginia. In these decisions a strict and literal compliance with the prescribed forms, and even the use of statutory words, was required to pass title. After the adoption of the Arkansas Constitution in 1874, these rigid rules of construction were in large measure relaxed, and many of the earlier cases overruled or the principles announced in them abandoned, and a new rule of decision became the settled

law.   To determine which of these lines of decisions should guide the court, it will be necessary to go somewhat at length into this matter.   Section 659, c. 27, M. D., which requires the husband to join in the execution of a married woman's deed to her lands, is a provision found in the first statutes of that state.   Section 10, c. 31, Stat. 1836.   It was continued in all subsequent statutes, and in section 849, Gantt's Digest 1874.   In the Constitution of 1868 Arkansas enlarged the rights of married women and gave them, in section 6, art. 12, the right to devise or bequeath their real estate the same as though a *femme sole*. In the Constitution of 1874, the rights of married women were still further enlarged, and section 7, art. 9, thereof gave them the right not only to devise or bequeath, but also to convey their real estate the same as though a *femme sole*.   After the adoption of this constitutional provision, the Legislature adopted it (section 7, art. 9) *in haec verba,* as a law, March 8, 1883, and it is section 4621, c. 104, M. D. Ark. (Ind. T. Ann. St. 1899, sec. 3021).   This was the state of the law of Arkansas when its statutes (Mansfield's Digest) were compiled in 1884, and while the ancient provision of the law requiring the joining of the husband in a married woman's deed was incorporated in that compilation, as section 659, c. 27, yet it had been modified, so as not to require such joining of the husband in the convey- ance of the wife's land, by both the sections of the Constitution of 1874, *supra,* and by the later act (section 4621) of the Legis- lature; and therefore, although incorporated, without modifica- tion, in Mansfield's Digest, it was not the law of that state, after the adoption of the Constitution of 1874, and was therefore not a law of Arkansas at the close of the legislative session of 1883. An unbroken line of decisions of the Supreme Court of Arkan- sas hold that after the adoption of the Constitution of 1874 this section, in so far as it required husbands to join in their wife's deed to her lands, was not in force, as to lands acquired, or where the marital relations began, after the adoption of the Constitution.   *Roberts v Wilcoxson,* 36 Ark. 355; *Holt v. Moore,* 37 Ark. 148; *Donahue v. Mills,* 41 Ark. 421; *Bryan v.*

*Winburn,* 43 Ark. 28; *Criscoe v. Hambrick,* 47 Ark. 325, 1 S. W. 150.

On May 2, 1890, Congress passed an act to enlarge the jurisdiction of the United States courts in the Indian Territory, and for other purposes (chapter 182, 26 U. S. Stat. 94). Section 31 of this act provided:

"That certain general laws of the state of Arkansas in force at the close of the session of the General Assembly of that state of eighteen hundred and eighty-three, as published in eighteen hundred and eighty-four in the volume known as 'Mansfield's Digest' of the Statutes of Arkansas, which are not locally inapplicable or in conflict with this act, etc., * * * are hereby extended over and put in force in the Indian Territory, until Congress shall otherwise provide, that is to say, the provisions of the said general statutes of Arkansas relating * * * to married women, chapter one hundred and four."

The first paragraph of chapter 104 as thus put in force is:

"Section 4621. The real and personal property of any *femme covert* in this state, acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise, shall, so long as she may choose, be and remain her separate estate and property, and may be devised bequeathed or conveyed by her the same as if she were a *femme sole;* and the same shall not be subject to the debts of her husband."

That a married woman could convey her real estate under this provision, as though she were single, is not disputed up to 1903, when Congress passed another act (Act Feb. 19, 1903, c. 707, 32 U. S. Stat. at L. p. 841), putting in force in Indian Territory chapter 27, Mansfield's Digest. The adopting words are:

"That chapter 27 of the Digest of the Statutes of Arkansas, known as Mansfield's Digest of eighteen hundred and eighty-four, is hereby extended to the Indian Territory, so far as the same may be applicable and not inconsistent with any law of Congress," etc.

In chapter 27, *supra,* are the following sections:

"Sec. 648. A married woman may convey her real estate or any part thereof by deed of conveyance, executed by herself and her husband and acknowledged and certified in the manner hereinafter prescribed."

"Sec. 659. The conveyance of any real estate by any married woman, or the relinquishment of dower in any of her husband's real estate, shall be authenticated and the title passed, by such married woman voluntarily appearing before the proper court or officer, and in the absence of her husband declaring that she had of her own free will executed the deed or instrument in. question, or that she had signed the relinquishment of dower for the purpose therein contained and set forth, without compulsion or undue influence of her husband."

Mr. Bledsoe, in his book entitled Indian Land Laws, at page 108, says:

"Section 4621 is copied from the Constitution of Arkansas of 1868 (1874). Previous to 1868 (1874), both under the Constitution and the statutes the conveyance by a married woman of her property had to be joined in by her husband. By mistake of the digester the old provision in the chapter on conveyances with reference to the acknowledgment of a married woman in force prior to the adoption of the Constitution of 1868 (1874) was continued in the statute. It is sections 659," etc.

After quoting the section, he continues:

"The chapter containing this section having been put in force in 1903 subsequent to the extension of the chapter on married women over the Indian Territory, some question has arisen as to whether a conveyance by a married woman is valid where not joined in and acknowledged by her husband. * * * It is not believed that Congress intended to deprive a married woman of the liberty given her under the married woman's act and recognized by every other law in force in the Indian Territory at that time. Such a conveyance made by a married woman and acknowledged as a *femme sole* would probably pass title to her property."

It may be also mentioned that the chapter 104, relating to married women, was incorporated in the compilation of laws in general use, in Indian Territory Statutes 1899, and chapter 27 was not in that compilation. We think that it is beyond dispute that the bar of Indian Territory almost unanimously held, and advised clients, that a married woman could convey her lands, under the married woman's act, the same as if she were single. Whether this opinion was the result of careful comparison and analysis of the conflicting provisions, or was influenced by the

fact that one provision was in the Indian Territory statutes and the other was not, it is needless to inquire; but it is probably true that hundreds if not thousands of titles in the cities and towns of Indian Territory have been acquired and transferred under this construction, involving an enormous sum of money in the aggregate and covering a period of many years. We believe it would be exceedingly unfortunate, if this court should be compelled to hold, on this proposition, with the views of plaintiff in error. Such holding would result in widespread confusion, and often in disaster, among the holders of titles in the east half of the state, and to do so we would have to feel it to be the unanswerable demand of the law. We do not find it necessary, however, for such considerations to enter into the matter. Congress, early in its enactment of general laws to govern Indian Territory, seems to have caught the spirit of the times, and struck from married women the shackles of the common-law limitations and restrictions. Most of the states of this Union from which the Congress is gathered have enlarged the rights and legal status of married women; and it would seem strange that the Congress, after having accorded these rights and permitting them to continue, and a rule of conveyance and of property to arise, during a period of more than twelve years, should intend to suddenly reverse its policy, and place the married women of Indian Territory again under common-law disabilities. And this, too, when the states from which the congressmen come are yearly traveling farther in the opposite direction.

We believe it was the intention of Congress to provide for the people of Indian Territory a body of harmonious laws under which they should live and conduct business. In the importation of statutes from other states, especially when brought over at different times, the very size of the transaction and the number of the provisions makes it almost unavoidable that conflicts occur. For this reason, a clause providing for harmony is always inserted. As in this instance. This chapter 27 was brought

over and put in force, "so far as the same may be applicable and not inconsistent with any law of Congress," etc.

It was inconsistent with regard to the matters discussed. It either repealed by implication the prior law, or it was intended to be brought over in so far as it harmonized with the prior laws. We believe the latter to have been the intention of Congress, and that sections 648 and 659 were brought over so modified as not to affect the conveyance by a married woman of her lands. To hold otherwise would overturn a rule of conveyancing in force for years, would destroy titles, and result in disastrous confusion. This being true, the decisions of the Supreme Court of Arkansas, construing these identical laws, both in the statutes at the same time in conflict, and rendered by that court prior to the date of their adoption here, should furnish a guide and the rules under which the deed in this controversy must be measured and tested.

So far as this case is concerned, it stands admitted that, on the date of the execution of the deed by defendant to Jake F. Arnold to the lands conveyed in his mortgage to plaintiff Henry C. Arnold, defendant Martha Adkins was the owner of the lands as her separate estate, in her own right. A construction of this deed is necessary. And if our conclusions are correct on the question of what law was in force in Indian Territory prior to statehood, then this deed will have to be construed by considering its terms in the light of the decisions of Arkansas, rendered after the Constitution of 1874 and prior to 1884. The deed with the acknowledgment follows:

"Warranty Deed with Relinquishment of Dower. Know all men by these presents: That W. B. Adkins of Yeager, Indian Territory, and Martha Adkins, his wife, party of the first part, in consideration of the sum of fifteen hundred dollars to me paid by Jake F. Arnold, cashier of Yeager, Indian Territory, party of the second part, the receipt whereof is hereby acknowledged, do hereby bargain, grant, sell and convey unto said Jake F. Arnold, cashier of Farmers' Bank of Yeager, I. T., his heirs and assigns, a certain lot, parcel or tract of ground situated in the Creek Nation, Indian Territory, described as follows, to wit: North half of the southeast quarter of section 13, township 8

north, range 9 east, of the Indian base and meridian in the Indian Territory, with all privileges and appurtenances thereto belonging. To have and to hold the aforegranted premises unto the said party of the second part, his heirs and assigns, in fee simple forever. (Here follows general covenants of warranty by W. B. Adkins, and clause relinquishing dower by Martha J. Adkins.) Witness our hands and seals on this the 15th day of January, 1907. W. B. Adkins. Martha J. Adkins.

"United States of America, Indian Territory, Western District—ss: On this the 15th day of·January, 1907, personally appeared before me, a notary public within and for the above-named district, W. B. Adkins, to me personally well known as the person subscribing the foregoing instrument, and acknowledged that he has subscribed and executed the same for the consideration and purposes therein set forth as his free, voluntary act and deed. And I further certify that on this day also voluntarily appeared before me, the undersigned notary public, Martha J. Adkins, the wife of the said W. B. Adkins, well known to me as the person whose name appears upon the within and foregoing deed, and in the absence of her said husband declared that she had of her own free will signed the relinquishment of dower therein expressed, for the purposes and consideration therein contained and set forth without compulsion or undue influence of her husband. Witness my hand and seal as such notary public on the day and year first above mentioned. Chas. Burton, Notary Public."

There is no charge of fraud, deceit, or inadequacy of price made in this case.

A case practically identical with the one at bar was decided by the Supreme Court of Arkansas, in the case of *Bryan et al. v. Winburn et al.*, 43 Ark. 28. In that case one Bell, on March 9, 1877, conveyed certain lands to Mrs. Winburn. Mrs. Bell joined in the granting clause of the deed, which contained, likewise, a clause relinquishing her dower. In the acknowledgment the notary certifies only to the relinquishment of dower on the part of Mrs. Bell. The title to the land was in Mrs. Bell. This is the exact situation in the case at bar. Mrs. Adkins, the owner of the land, joined her husband in the granting clause. A relinquishment of dower clause is in the deed. The acknowledgment recites only the re-

linquishment of Mrs. Adkins' dower. In the case last cited (*Bryan et al. v. Winburn et al.*) the syllabus is as follows:

"Since the adoption of the Constitution of 1874, a married woman can convey her separate property the same as if she were single; and where she joins her husband in a deed of her land, and also relinquishes dower, the deed will convey the fee, though she acknowledges only the relinquishment."

In the body of the opinion it is stated:

"It is further contended that the deed from the Bells and the certificate of acknowledgment, not being in the form prescribed for the conveyances of the wife's estate, are so defective as not to vest title in Mrs. Winburn, according to the doctrine of *Little v. Dodge,* 32 Ark. 453, and *Wentworth v. Clark,* 33 Ark. 432. Perhaps this objection has no great force coming from the appellants, who do not claim through the Bells, and who purchased with notice of Mrs. Winburn's rights in the premises, whatever they were. But the deed was executed since the adoption of the Constitution of 1874, which enables a married woman to convey her separate property the same as if she were single. Mrs. Bell did join in the operative words of grant, as well as relinquish dower, which last estate, of course, she had not in her own lands. And although her acknowledgment is defective, yet, as between her and her grantee, the deed might be good without acknowledgment, or vest an equitable title. *Stirman v. Cravens,* 29 Ark. 548; *Jackson v. Allen,* 30 Ark. 110; *Roberts and Wife v. Wilcoxson & Rose,* 36 Ark. 355; *Donahue v. Mills,* 41 Ark. 421."

An examination of this deed shows that Mrs. Adkins, the sole owner of the land, joins in the operative words of grant, usually designated as the "granting clause." This clause is carelessly drawn, and uses both the singular and plural in the designation of parties. It speaks of both as "party of the first part." It recites the consideration as "to me paid," and then, in the actual words of grant, says "do hereby bargain, grant, sell, and convey." Mrs. Adkins participates in the *"habendum"* clause in the body of the deed following the words of grant. It is true the covenants of warranty were made by her husband, but the warranties stipulated in this deed were unnecessary to be inserted in it, because they were implied by the use of the granting words "grant, bargain, and sell." Section 639, Mansf. Dig. Ark.

In attempting to arrive at the intention of the parties to this deed, we may take into account the situation of the parties at the time it was executed. This land was part of the allotment made in the name of the deceased infant child of the grantors. At the time it was made, it is very probable that neither the grantors nor grantee had a very clear or correct idea as to whether both parents, or, if only one, which of them, took title to this land. They did not then have the advantage of the adjudication of this court in regard thereto. And in this situation it seems reasonable, and comports with the idea of fair dealing between the parties, to believe that when the purchaser paid $1,500 for this 80 acres of land he believed, and when the husband and wife signed the deed and received into the family the money that they believed, that a full transfer of all the legal rights they each had in the lands was being accomplished, whatever those rights might be. The insertion of the release of dower was probably a matter of precaution, and to make certain of a full title, in the event the courts later, in construing the question of descent, should hold that the child's lands passed to the father. The parties evidently believed that these lands had passed to the father, in which event the wife had dower, or to the father and mother in equal rights, or to the mother alone. In any event, it appears clear that in this deed the parties were trying to provide a vehicle so comprehensive in its terms as to surely pass all the title each of the parents of the deceased child had, whatever those rights might later be determined to be.

In the light of the Arkansas decisions, and in reason, we believe that the deed in this case was sufficient to pass title, as between the parties and their privies, although not acknowledged in such form as to entitle it to registration under the law in force in Indian Territory. The plaintiff in this case was seeking to foreclose a mortgage given by the grantee of Mrs. Adkins. The deed being good between the grantor and grantee, it was good as to the mortgagee. No other deeds or subsequent conveyances are set up.

We therefore believe the answer and cross-petition of defendant did not state a defense, a cause of action, or grounds for relief as sought, and that the demurrer to same was properly sustained, and the judgment of the trial court should, therefore, be affirmed.

By the Court: It is so ordered.