WOOTEN *v.* FARMERS' & MERCHANTS' BANK.

## Opinion delivered April 2, 1923.

1. HOMESTEAD—ABANDONMENT.—Abandonment of a homestead depends almost exclusively on the intent of the owner as revealed by the facts and circumstances of each particular case.

2. HOMESTEAD—ABANDONMENT.—Evidence *held* to sustain a finding of an intention to abandon a homestead.

3. ACKNOWLEDGMENT—CONCLUSIVENESS OF OFFICER'S CERTIFICATE.— While a married woman may, against all the world, show that she never made any acknowledgment at all, and that the certificate is either a forgery or an entire fabrication of the officer, yet if she has actually made some kind of acknowledgment before an officer qualified to take it, his certificate will be conclusive as to the terms of the acknowledgment and the concomitant circumstances, in favor of all persons who, themselves innocent of fraud or of collusion to deceive or influence her, have taken the instrument on the faith of the certificate.

4. ACKNOWLEDGMENT—TELEPHONE ACKNOWLEDGMENT.—Where a married woman signed a deed relinquishing her dower rights, her acknowledgment taken by an officer over the telephone *held* sufficient, under the rule stated in the preceding paragraph.

Appeal from Poinsett Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

*Aaron McMullen* and *Gautney & Dudley,* for appellant.

The court erred in finding appellant had abandoned his homestead, the Reynolds tract of land, and the deed of trust conveying same, a valid instrument. Said deed was void, the appellant, wife of the grantor, not having joined in its execution and acknowledged same as the law requires. Secs. 5542, 1521, 1524, Crawford & Moses' Digest. Mrs. Wooten testified she did not sign the deed of trust nor acknowledge same. Her husband testified also that she did not, but that he signed her name to it, and the notary testified that he took her acknowledgment over the telephone. Law required her personal appearance before the officer taking her acknowledgment, and it could not be taken over a telephone. *Nevada County Bank v. Gee,* 130 Ark. 312; *Waldon v. Blassengame,* 130 Ark.

448; *McLeod* v. *McLeod,* 130 Ark. 481; *Polk* v. *Brown,* 117 Ark. 321. It is undisputed that the Reynolds place was appellant's homestead when the deed of trust was executed on December 22, 1919, and no subsequent abandonment could operate to cure its invalidity. *Pipkin* v. *Williams,* 57 Ark. 242; *Taylor* v. *Hargus,* 60 Am. Dec. 606; *Alt* v. *Bankholzer,* 12 A. S. R. 47; *Am. Sav. & L. Assn.* v. *Burghardt,* 61 A. S. R. 507. When there is an intention to return to one's homestead, a temporary absence does not operate as an abandonment. *Stewart* v. *Pritchard,* 101 Ark. 101; *McDaniel* v. *Conlan,* 134 Ark. 519. Even had Wooten, the husband, attempted or contracted to sell the homestead, he could fail to do so without being liable to damages when his wife did not join. *Ferrell* v. *Wood,* 149 Ark. 376. The absence of the owner from the homestead, however long continued, will not constitute an abandonment, without a fixed intention to renounce and forsake, or to leave never to return. *Euper* v. *Alkire,* 37 Ark. 283; *Brown* v. *Watson,* 41 Ark. 309. There is nothing in this entire record indicating an intention on part of appellants to abandon their homestead, and the decree as to the homestead tract should be reversed.

*Basil Baker,* for appellees.

If appellant had a homestead on the Reynolds place, he must have held the constant and abiding intention of returning to it after moving away, his absence must have been merely temporary, in order not to constitute an abandonment of it. *Euper* v. *Alkire,* 37 Ark. 283; *Gates* v. *Steel,* 48 Ark. 539; *Stewart* v. *Pritchard,* 101 Ark. 101. Husband can abandon without wife's consent. *Farmers' Building & L. Assn.* v. *Jones,* 68 Ark. 76; *Curtis* v. *DeJardins,* 55 Ark. 126; *Pipkin* v. *Williams,* 57 Ark. 242; *Sidway* v. *Lawson,* 58 Ark. 117; *Whipple* v. *Keith,* 134 Ark. 202; *Wolf* v. *Hawkins,* 60 Ark. 262; *Brown* v. *People's Bank,* 150 Ark. 136; *Bernhart* v. *Gorman,* 131 Ark. 116. Doctrine of estoppel applies. *Green* v. *Coldwaver,* 99 Ark. 260; *Sumpter* v. *Ark. Nat'l. Bank,* 69 Ark.

224; 21 C. J. 1202, sec. 205. Effect of declaration of intention not to return. *Dean* v. *Cole,* 141 Ark. 177; *Long* v. *Hoffman,* 103 Ark. 574; *Cunningham* v. *Dellman,* 151 Ark. 409; *Gray* v. *Bank of Hartford,* 137 Ark. 232; *McDaniel* v. *Conlan,* 134 Ark. 519; *Vestal* v. *Vestal,* 137 Ark. 309. The qualified intention was an abandonment. *Wolf* v. *Hawkins,* 60 Ark. 262. Particular form of acknowledgment of deed to homestead not required of wife. *Pipkins* v. *Williams, supra; Sledge & Norfleet Co.* v. *Craig,* 87 Ark. 371; *Ward* v. *Stark,* 91 Ark. 268.

HUMPHREYS, J. Appellees brought suit against appellants in the Poinsett Chancery Court to foreclose a deed of trust executed by appellants to appellees upon the SE¼, NW¼, section 26, township 11 north, range 7 east, and other lands in said county, to secure a large indebtedness.

Appellants interposed the defense that the deed of trust was invalid as to the dower interest of Mattie L. Wooten in all of the lands, on the alleged ground that she did not sign or acknowledge the instrument, and invalid as to the interest of both in the forty-acre tract particularly described above, on the alleged ground that it was their homestead, and in executing the instrument there was a failure to comply with the law necessary to convey homesteads.

The cause was submitted to the court upon the pleadings and testimony, which resulted in a decree adverse to appellants, from which is this appeal.

Appellant, G. C. Wooten, bought the forty-acre tract above described in the year 1916, and impressed it as his homestead by actual occupancy and otherwise. He also purchased the adjoining forty-acre tract, called the Wall place. He built a barn upon the Wall place and made other improvements upon both places of a substantial and permanent character. About January 1, 1918, he leased the plantation known as the Chapman & Dewey lands and moved upon and occupied them during the years 1918 and 1919, but with the declared

purpose of returning later on to the Reynolds place, which he called his home place. While occupying these leased lands, he purchased two other large tracts, which adjoined, one known as the Harris and the other as the Marr place. These were good places, well located for farming purposes, and near the school. In order to make the initial payment on the Harris place, he executed the deed of trust in question to appellees on the 22nd day of December, 1919. J. D. DuBard, the cashier of the bank, testified that when G. C. Wooten applied for and obtained the loan he said he intended to sell the Wall and Reynolds places, and, as they were sold, to apply the proceeds to the payment of the debt, whereupon he prepared the notes and deed of trust and gave them to Wooten to be executed; that Wooten returned them duly executed and received the money; that in February or March, 1921, Wooten sold the Wall place to Schoenberger & Blum and applied the proceeds to the payment of the debt, according to promise; that Wooten sold the Reynolds place to Dr. Sims, who executed his note for $2,000 to cover the cash payment which was to be made after Wooten borrowed and placed a $2,000 mortgage on the place, which mortgage Sims was to assume; that the sale was not finally consummated because the money market tightened up and prevented Wooten from borrowing $2,000 on the long-time paper, and because Sims was unable to get the money to make a cash payment; that he examined the signatures on the deed of trust and discovered that Mr. and Mrs. Wooten's names were signed by different persons in different colored ink; that in September, 1921, he demanded a payment upon the indebtedness; that Wooten refused to pay anything, and said, ''Well, I have good grounds to scrap you on, and I might as well tell you now as later; I forged my wife's name to the deed of trust which you hold, and if you insist on carrying this into court, it may send me to the penitentiary, but it won't make you any money; but if you let me alone I will pay it.''

The record reflects that appellant made an oral sale of the Reynolds place and received some earnest money on it, but afterwards backed out and returned the money and offered to sell it to others; it also reflects that he moved off of the leased land to the Marr place, and made a number of improvements upon it and the Harris place, such as screening and repairing the main dwelling, building tenant houses, planting out an orchard, building a large barn, etc.; it also reflects that, during the time he was improving the Marr and Harris places, he told friends and neighbors that he intended to make the Marr place his home; it also reflects that he had a change for the worse in fortune, due to the slump in the price of cotton, and, when pressed by the bank and other creditors, he moved, at an unusual time of the year, back to the Reynolds place, claiming that it had always been their homestead. The following testimony, in substance, appears in the record concerning the execution and acknowledgment of the deed of trust: G. C. Wooten testified that he signed his name to the notes and deed of trust at the bank, and signed his wife's name to them at Williams' store; that he signed her name because he knew she would not do so at his request; that he signed her name without her knowledge or consent, and did not inform her that he had done so until the year 1921; that he took the papers to F. R. Proctor, notary public, and told him to call his wife over the telephone and take her acknowledgment; that he left the papers with the notary, and got them later in the day; that he took them to Mr. BuBard, and called his attention to the fact that he had signed his wife's name to them. Emmit Wooten, appellant's son, who was with him at the time, also testified that his father called Mr. DuBard's attention to the fact that he had signed his mother's name. Mr. DuBard denied that his attention was called to this fact, and said if it had been he would not have accepted the papers. Mrs. Mattie L. Wooten testified that she did not sign the notes and mortgage or authorize her hus-

band to sign her name to them, and that she was never requested to sign them, and would not have done so had such a request been made; that she never acknowledged the execution of the deed of trust before F. R. Proctor; that she did not know Mr. Proctor. F. R. Proctor testified that G. C. Wooten brought the deed of trust to him and requested him to take Mrs. Wooten's acknowledgment over the telephone; that he was personally acquainted with both G. C. Wooten and his wife, as they had been trading in the store; that, pursuant to the request, he called Mrs. Mattie L. Wooten over the telephone at her home, recognized her voice, and told her that Mr. Wooten had brought him a deed of trust and requested that he take her acknowledgment to it; that he asked her if she had read and signed it and understood what it was. She said that it was all right, and acknowledged that she had executed it; that G. C. Wooten remained near him while he telephoned to Mrs. Wooten, and could hear the questions he asked her; that his name and the name of G. C. Wooten were signed in the same sort of ink; that Mrs. Wooten's name was signed with a different kind of ink. G. H. Williams testified that he remembered when G. C. Wooten came into his place on business to get Mr. Proctor to take the acknowledgment in question; that Mr. Proctor rang and called for Mrs. Wooten; that he heard Mr. Proctor ask if it was Mrs. Wooten, and then whether she had signed the deed of trust, and if she knew what she was signing, and if she had signed it of her own free will; that he was standing within eight feet of the 'phone at the time.

Appellants make two contentions for a reversal of the decree, the first being that the court erred in finding G. C. Wooten had abandoned his homestead right in the Reynolds place, and second, in finding that the deed of trust was executed in manner required to waive dower right of Mrs. Mattie L. Wooten in the lands.

(1) This court is committed to the doctrine that the abandonment of the homestead depends almost ex-

clusively upon the intent of the owner, as revealed by the facts and circumstances of each particular case. *Euper* v. *Alkire,* 37 Ark. 283; *Gates & Bro.* v. *Steel,* 48 Ark. 539; *Stewart* v. *Pritchard,* 101 Ark. 101. Our interpretation of the testimony, after a very careful reading thereof, is that appellant left his home place with the intention of returning to it, and that he held this intention until he decided to buy the Harris and Marr places, which adjoined each other. All his declarations and acts up to that time unerringly indicated a temporary absence only, and an intention to return to the Reynolds place, which he had impressed with the homestead character by residing thereon and otherwise. All his declarations and acts after he decided to purchase the Harris and Marr places, until financial troubles overtook him, indicated just as unerringly that he had changed his mind and never intended to return to the Reynolds place, but, on the contrary, intended in the future to abide upon the Marr place, including, perhaps, all or a part of the Harris place. At that time he not only declared his intention to make the Marr place his home, but borrowed money and executed a deed of trust in question to make the initial payment on the Harris place, under a distinct promise to sell the Reynolds and Wall places and apply the proceeds on the payment of the indebtedness. In keeping with said declarations and promise, he moved to the Marr place and made valuable improvements thereon, and sold the Wall place and applied the proceeds on said indebtedness. He also contracted to sell the Reynolds place, and deposited the $2,000 note to cover the cash payment therefor in the bank, to be applied on said indebtedness when same was paid. He permitted the improvements on the Reynolds place to deteriorate during the time he was improving the Marr and Harris places, and made no move to return to the Reynolds place until he became unable to extricate himself from financial entanglements. The finding of the trial court on the question of aban-

donment was in accordance with the weight of the evidence.

(2)   The trial court found that Mrs. Mattie L. Wooten signed the deed of trust in question. The substance of the testimony bearing upon this point has been set out herein. The testimony is in sharp conflict and so evenly balanced that we are unable to say the finding of the court was contrary to the clear preponderance of the testimony. The court's finding upon that point is therefore sustained. The trial court also found that Mrs. Mattie L. Wooten acknowledged the execution of the instrument over a telephone. This finding is in accordance with the weight of the evidence. The only remaining question to be determined is whether her acknowledgment through the telephone is sufficient in the law to relinquish her dower interest in the lands. The deed of trust, upon its face, purports to relinquish the dower right of Mrs. Mattie L. Wooten in the lands described therein. The certificate of acknowledgment, on its face, is regular and contains all statutory requirements of certification necessary to relinquish her dower right in said lands. The statutory law with reference to the relinquishment of dower rights in this State is embraced in §§ 1506 and 1524 of Crawford & Moses' Digest, which are as follows:

"Sec. 1506.   A married woman may relinquish her dower in any of the real estate of her husband by joining with him in the deed of conveyance thereof, or by a separate instrument executed to her husband's grantee or any one claiming title under him, and acknowledging the same in the manner hereinafter prescribed."

"Sec. 1524.   The relinquishment of dower of a married woman in any of her husband's real estate shall be authenticated and the title passed by such married woman voluntarily appearing before the proper court or officer, and, in the absence of her husband, declaring that she had, of her own free will, signed the relinquishment of dower for the purposes therein contained and

set forth, without compulsion or undue influence of her husband.'' In construing these statutes this court said, in the case of *Donahue* v. *Mills*, 41 Ark. 421: ''It is now the settled doctrine of this court, as laid down in the opinion by Chief Justice ENGLISH, in *Meyer* v. *Gossett,* and we still think the only safe doctrine, that whilst a wife may, against all the world, show that she never made any acknowledgment at all, and that the certificate is either a forgery or an entire fabrication of the officer, yet if she has actually made some kind of acknowledgment before an officer qualified to take it, his certificate will be conclusive as to the terms of the acknowledgment, and the concomitant circumstances, in favor of all persons who, themselves innocent of fraud or of collusion to deceive or influence her, have taken the instrument on the face of the certificate. 38 Ark. 377.''

Mrs. Mattie L. Wooten's acknowledgment of her relinquishment of dower comes within the rule thus announced, and is sufficient in the law. According to the weight of the evidence, the certificate of acknowledgment was neither a forgery nor a fabrication of the officer who made it.

The decree is affirmed.