## DALTON v. HOPPER.

No. 9470—Opinion Filed Jan. 7, 1919.

(177 Pac. 571.)

1. **Contracts — Rescission — Restoration to Former Status.**

Under section 986, Rev. Laws 1910, every-

thing of value only need be restored by one seeking a rescission.

### 2. Fraud—Representations as to Value.

A representation as to value is usually regarded as an expression of an opinion, but where made by one as an inducement to another, who is ignorant thereof, to enter into a contract, and relied upon by the latter to his detriment, the same may be made the basis of an action for damages consequent upon fraud and misrepresentations.

### 3. Same.

Such a transaction involving the sale of stock in a corporation, representations as to the financial condition of the company, the value of its stock, its immediate financial prospect, when made with a view to induce another to purchase the stock, are representations of matters of fact, and not expressions of opinion, and such representations, when made and relied upon by one purchasing the same, if false, constitute actionable fraud.

(Syllabus by Hooker, C.)

Error from District Court, Haskell County; W. H. Brown, Judge.

Action by H. L. Dalton against E. M. Hopper. Judgment for defendant, and plaintiff brings error. Affirmed.

L. J. Roach, for plaintiff in error.

Frank G. Anderson, for defendant in error.

Opinion by HOOKER, C. H. L. Dalton sued E. M. Hopper, to recover judgment on a promissory note for $446.50, executed on April 28, 1914, by Hopper to him, and due September 15, 1914.

The defendant answered, admitting the execution of the note, and as a further defense against the same alleged that in October, 1913, he was the owner of 440 acres of land in Haskell county, of the value of $11,000, mortgaged for $4,000, and that the plaintiff about that time, through his agent, one J. M. Bettes, negotiated a trade with him for his equity in said land, giving in exchange therefor 700 shares of stock in the Republic Trust Company, a corporation of Dallas, Tex., of par value of $10 per share, and that for the purpose of inducing said exchange the agent of the plaintiff made certain representations concerning said stock and its value, for the purpose of deceiving and misleading said defendant, upon which he relied, and that the purport of said representations and statements were that said Republic Trust Company was solvent, in good financial condition, and had been and was paying dividends of at least 9 or 10 per cent. per year on the par value of said stock; that said representations were false and fraudulent

in that said company was at that time insolvent and said stock worthless.

The answer further alleged that in April, 1914, the plaintiff came to the said defendant and stated to him that there was a commission mortgage over the $4,000 incumbrance upon said land, and that under the terms of the agreement and trade between them it was incumbent upon this defendant to pay all of the incumbrances, except $4,000, and that this defendant, desiring to comply strictly with the terms of his contract and agreement, made and delivered to said plaintiff the note sued upon here, but that the same was done before he discovered the falsity of the representations made by the agent of the plaintiff as to the value of said stock, etc.

The answer further alleged that shortly thereafter the plaintiff discovered that there was another mortgage for $500 against said land, in excess of the sum of $4,000 assumed by him, and then and there called upon this defendant to pay the same, as according to said contract he had obligated himself to do; that this defendant, not knowing the falsity of said representations, in order to compensate plaintiff for the $500 mortgage, conveyed to him a tract of 20 acres of land.

The answer further alleges that, by reason of the alleged false representations aforestated, the entire transaction between the plaintiff and defendant was void or voidable, and the defendant prayed for cancellation of the note sued upon, and for a reconveyance of all of the real estate procured from him by the plaintiff, and in said answer offered to return to the plaintiff all the stock received from him, save and except $500, which he alleged he had disposed of, but offered to account for the value thereof in the settlement of the controversy between them.

The plaintiff below contended that the burden of proof was upon the defendant to sustain his allegations of false and fraudulent representations as to the financial condition of the company, and its dividend-paying qualities, and that under the evidence introduced upon the trial this burden was not sustained, for the reason that the defendant himself was at that time the owner and holder of stock in said company, and was as conversant of the financial condition of the company as plaintiff himself, and, being a stockholder, had no right to rely upon the representations of the plaintiff as to the value of the said stock or financial condition of said company. And the plaintiff further contended that, in view of the fact that the defendant below was not in a position to restore all of the property he had procured

by reason of exchange, he was not entitled to a rescission of said contract.

Upon the trial of this cause certain interrogatories were submitted to the jury, and the jury returned answers thereto, which found first, that Bettes, at the time he exchanged said stock to the defendant, represented to him that the Republic Trust Company of Dallas, Texas., was solvent, that said representation was false, and that it was made for the purpose of deceiving the defendant, and did deceive him; and he likewise represented that the company was in good financial condition, that said statement was false, that it was made for the purpose of deceiving the defendant, and did deceive him, and that he represented that said company was paying dividends of 8 per cent. or more, that said representation was false, and that it was made for the purpose of and did deceive the defendant. And the jury further found that the defendant at that time owned other stock in the company, and that Bettes furnished to him a financial statement of the company, but that said defendant did not examine the same, and that said financial statement thus furnished was false, and that the stock disposed of by Hopper to the extent of $500 was worthless; and it further found what the reasonable rental value of the land exchanged by Hopper to plaintiff was.

The court at the conclusion of the trial ordered a rescission and an accounting, charging the plaintiff with a reasonable rental value of the property for the years 1914, 1915, and 1916, and allowing him a credit for mortgages and repairs, and for the further sum of $1,500 which was an obligation due by the defendant to one J. M. Bettes, leaving a net credit to the plaintiff of $2,300. From this judgment the plaintiff below appealed, and presents the following reasons for a reversal:

1. That a party who seeks a rescission of a completed contract for any cause must be in a position to restore, and must offer to restore, the other party to the said situation he occupied before the trade occurred; and in support of this contention he cites section 986, Rev. Laws 1910, which provides as follows:

"Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"First. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind: and,

"Second. He must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

Paragraphs 616, 617, and 618 of Mr. Black on Rescission and Cancellation are also relied upon as authority supporting the doctrine announced above. And it is asserted that, in view of the fact that the defendant below admitted that $500 of the stock was not in his possession, and that he was not in position to place the defendant in statu quo, he was therefore not entitled to a rescission.

This position is not tenable for the reason that the answer alleged here that the stock received by the defendant was of no value. The opinion of the jury, based upon the evidence, supported this allegation, and it further appears that the defendant in his answer tendered to the plaintiff 50 shares more than the plaintiff contends that he traded to the defendant in this transaction, and, for the further reason that the defendant all along has expressed a willingness to account for the value of 50 shares of stock disposed of by him, and under the verdict of the jury and judgment of the court this has been accounted for in the settlement made by the court.

The statute provides that a party must return everything of value; therefore the pleading and the proof here brings the defendant in error clearly within the statute. And the authorities are uniform that where property is worthless, that is, where it would be of no advantage to the party against whom rescission is sought, that its restoration would be a useless requirement and an idle formality. See Black on Rescission and Cancellation, § 622. And this court, in the case of Shawnee Life Ins. Co. v. Taylor, 58 Okla. 313, 160 Pac. 622, said, in construing section 986, Rev. Laws 1910:

"That, as it is 'everything of value' only that need be restored, the court did not err in decreeing a rescission and cancellation of the deeds and mortgage complained of."

Also in the case of Hood v. Wood, 61 Okla. 294, 161 Pac. 210, this court gave the same construction to said statute. See, also, 39 Cyc. 1380; 9 C. J. 1211, and authorities cited supporting this doctrine.

It is further asserted by the plaintiff in error that the court erred in admitting evidence of statements made by Bettes as to the market or money value of the stock, for the reason that the answer did not allege

misrepresentations as to this. The pleading in question alleged that the plaintiff did falsely and fraudulently represent to the defendant that the Republic Trust Company was, at that time solvent, in good financial standing, and that said stock had been, and was at that time, paying at least 9 or 10 per cent. in dividends each year on the par value of said stock. The evidence here discloses that at that particular time, when these statements were being made by the agent of the plaintiff as an inducement to the defendant to make said trade, this company was insolvent—that it was unable to pay its obligations, was not engaged in business actively, and was not paying dividends.

This court, in the Hood Case, above cited, said:

"A representation as to value is usually regarded as an expression of opinion, but, where false and made by one as an inducement to another, who is ignorant thereof, to enter into a contract, and is relied upon to the detriment of the latter, may be made the basis of an action for damages consequent upon fraud and misrepresentation."

And this court further said therein:

"In a transaction involving the sale of stock in a corporation, representations as to the financial condition of the company, the volume of its business, the amount of its income and expenses. the value of its stock, and its immediate financial prospects are all matters peculiarly within the knowledge of the company. and. when made with the view to induce another to subscribe therefor. are representations of matters of fact, and not expressions of opinion, and such representations so made, and when relied upon by the purchaser of said stock, if false, constitute actionable fraud."

And the court further in said case lays down the rule:

"One who relies upon a material representation, which is false. is not always precluded from recovering damages by reason of the fact that he had the opportunity to investigate for himself, and did not do so."

The authorities cited in the case above named support the rules announced.

This testimony in our judgment was competent and properly admitted. It is oftentimes difficult to prove fraud of this character, and the law in, its wisdom, and in its effort to give to the aggrieved party the relief to which he is entitled, is very liberal in the introduction of evidence, and any fact or circumstance which tends to throw light upon the situation of the parties and the transaction which took place between them is admissible, if not otherwise incompetent under other rules of law. The statement of Bettes as to the market value of this stock

was a relevant circumstance, and unquestionably had a bearing and an influence upon the defendant here, when he parted with an equity of $7,000 in real estate for the worthless stock in this company.

The other testimony here showing the value of the stock at a later date, we cannot say, under the facts of this case, was prejudicial, because the same afforded a basis to determine the value of the stock at the date of this exchange and the financial condition of the company. This evidence was but a recitation. and a complete history of the financial affairs of the company, and clearly demonstrates that it never was a solvent institution. but at all times was of doubtful value.

It is further asserted that the trial court erred in overruling the plaintiff's demurrer to the defendant's evidence, for the reason that at the time of said demurrer the defendant had introduced no testimony whatever tending to prove the falsity of Bettes' representations. This court, however, in the case of Meyer v. White, 27 Okla. 400. 112 Pac. 1005, has laid down the rule as follows:

"Where the district court overrules a demurrer to plaintiff's evidence and thereafter both parties proceed with the trial and introduce further and additional evidence, and sufficient evidence is introduced to make out a case for the plaintiff, a judgment rendered and entered in his favor on a verdict for plaintiff will not be disturbed."

After the trial court overruled the plaintiff's demurrer to the defendant's evidence, the plaintiff offered testimony, and did not stand upon the demurrer; so he is not in a position to urge the overruling of the demurrer to the defendant's evidence in chief as error here, and the question now is whether, under all of the evidence, the judgment rendered is reasonably supported by the evidence.

That Hopper had the right to rely upon the statements made by the plaintiff, through his agent, as to the financial condition of the company and its dividend-paying capacity, is fully determined by the authorities. Halsell v. Bank, 48 Okla. 535, 150 Pac. 489, L. R. A. 1916B, 697; Werline v. Aldred. 57 Okla. 391, 157 Pac 305. It would be a very harsh rule of law to say that one could make statements which were made for the purpose of inducing another to rely upon in order to consummate a trade, and then, when an action is instituted against him on account of the falsity of said statements, to permit him to say. "Yes, I made the statement, but you should not have relied upon it." This doctrine cannot be tolerated in this jurisdiction.

In our judgment, the judgment of the trial court is supported by this evidence. The same meets with the approval of our conscience, and we unhesitatingly affirm it. That Dalton was unloading this stock upon Hopper is clearly shown, and a court of equity could not refrain from placing these parties in statu quo under this record.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.