UNITED STATES FIDELITY & GUARANTY CO. v. HELLER et al.

(District Court, E. D. Pennsylvania.    July 12, 1919.)

No. 1413.

1. EQUITY ⊕=6—JURISDICTION—MISTAKE—REMEDY.
    Mistake is a recognized ground for the exercise of the equitable ju-
risdiction of courts, and the correction of mistakes by doing away with
their consequences is a recognized remedy to be applied.

2. EQUITY ⊕=8—GROUNDS FOR RELIEF—MISTAKE OF FACT.
    A surety on an appeal bond, indemnified by deposit of collateral by a
third· person, which surrendered the same after reversal of the judg-
ment and expiration of the time for filing motion for rehearing, both
parties being ignorant of the fact that such a motion had been filed,
with the subsequent result of a reversal of the decision and affirmance
of the judgment, which was paid by the surety, *held* to have surrendered
the securities under a mistake of fact which entitled it to equitable
relief by a decree for their return.

In Equity.   Suit by the United States Fidelity & Guaranty Com-
pany against Clyde A. Heller and others.   Decree for complainant.

Thomas Stokes and Bayard Henry, both of Philadelphia, Pa., for
plaintiff.

Charles Sinkler, J. W. Bayard, and Owen J. Roberts, all of Phil-
adelphia, Pa., for defendants.

DICKINSON, District Judge.   The plaintiff presents a strong ap-
peal for relief from the hard situation in which it finds itself.

A short outline statement of the facts develops the point pre-
sented in this case to be ruled:   Willis D. Hogue brought an action
against the Washington Oregon Company in the state courts of Ore-
gon.   Judgment was recovered against the defendant in this action.
The defendant desired to take an appeal to the Supreme Court of
the state.   To do this it was necessary for it to enter bond in the sum
of $30,000 with surety.   The defendant in that judgment applied to
the plaintiff in the present action to become such surety.   The ap-
plication was declined unless the surety was protected by the deposit
of collateral.   The appellant had no acceptable collateral.   The late
Mr. Horace Brock was asked to furnish it.   This he was willing to do,
and in order to carry out his purpose he delivered certificates for
shares of stock in another corporation, which he owned, to Clyde A.
Heller, one of the defendants, in whose name the stock stood.   Hel-
ler then being the nominal owner of the stock, with the full authority
of the real owner to so do, procured a certificate for 7,500 of the
shares to be made out in his name, executed in blank the ordinary
stock power, which would give to the holder of the stock certificate
the full power and authority to dispose of it, and delivered the cer-
tificate to the surety.   At the same time Heller and the surety en-
tered into the usual form of agreement in cases of deposit of se-
curity for such a purpose.   It recited the purpose of the deposit of
the stock with them; gave them full authority and power to dispose of

⊕=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the stock, freed of the equities of all parties, and to apply the proceeds to reimburse them for any payments which the surety company might be called upon to make by reason of having executed the surety bond. It contained a further provision by which the surety company agreed to hand back the stock when its liability as such surety had terminated and evidence had been presented to the surety company of the ending of such liability. A bond in the appellate proceedings referred to was then executed and the cause proceeded to a determination.

After the cause had been ruled by the Supreme Court of Oregon a judgment was entered by that court which reversed the judgment from which the appeal had been taken, and remanded the cause to the trial court for further proceedings. If matters had remained as they then were the present action would not have been instituted, because all responsibility and liability of the surety company had ended. The defendant in that case was notified by its counsel that the appeal had been successful and the judgment of the lower court reversed. Application was then made by the appellant to the surety company for the return of the collateral deposited with it as indemnity. The surety company was given the information which the appellant had received, and was asked what they would require as evidence that their liability had ceased. The surety company replied that they would require a certified copy of the decree of the Supreme Court, together with a copy of the opinion accompanying the decree. This was to be under the seal of that court, certified by the clerk. This evidence was promptly supplied, and the surety company, in the belief and acting upon this belief that its liability had ceased, surrendered its collateral.

It appears that under the laws of the state of Oregon that the mandate to the lower court, following appeals to the Supreme Court, is withheld for 20 days, within which time the party against whom the appellate court has ruled may apply for a reargument, and in case the reargument is allowed this ipso facto suspends the operation of any judgment or decree of the appellate court until the reargument has been heard and the case disposed of. Whether the plaintiff in the present cause had knowledge in fact of this rule does not clearly appear, but in point of fact it waited until after the expiration of the 20 days before it returned the collateral. It did in fact, however, as already stated, return it, together with the unearned part of the premium which had been paid in advance for the current year.

The present controversy has arisen because of the fact that within the 20 days the appellee had filed in the case before the Supreme Court of Oregon a petition for a reargument. Of this fact all parties to the present cause were ignorant until some time after the return of the collateral.

As soon as the true state of the facts came to the knowledge of the present plaintiff it at once notified the defendant in the other action, and Mr. Heller, to whom the collateral had been surrendered, and demanded of him that the collateral be restored. Mr. Heller in the meantime had handed over the collateral to Mr. Brock, and so

notified the surety company. The same information was at once given to Mr. Brock, and the same demand made upon him. With this demand he refused to comply, asserting that he was under no obligation to give up his stock. Following this refusal the present bill was filed. Mr. Brock has since died, and the representatives of his estate have been substituted upon the record. In the meanwhile the proceedings in the state court went on under the petition for a reargument. The argument was held, and the Oregon court recalled its former ruling and entered another affirming the judgment from which the appeal was taken. This judgment became final, and the surety company was called upon to pay, and has been required to pay, and has paid, a sum approximately $14,000 in discharge of its obligation under the appeal bond.

Its substantial prayer is that the stock referred to be returned to the plaintiff.

There is no controversy over the above evidentiary facts. The real question in controversy is that of the right of the plaintiff to have, and the duty of the defendants to restore to it, the collateral which the plaintiff gave up. The plaintiff bases its claim of right upon the proposition that it surrendered its property under a mistake of fact, which was the mutual mistake both of the plaintiff in surrendering and of the defendants in accepting the surrender of the stock.

It may be helpful to have clearly in our minds just what the mistake was. There was no mistake either in the facts, or in the law arising out of the facts, upon the basis of which the parties acted. The appeal to the Oregon court had been argued and decided in favor of appellant. The law was that, if the case had been successfully prosecuted, the liability of the surety had ended. The mistake was in overlooking the other fact that the appellee had filed a petition for a reargument. The present controversy has arisen because all the parties were in ignorance of the fact last mentioned. The specific provisions of the collateral agreement are not such as to vary what would be the rights of the parties had this formal agreement not been made. It gave to the surety the right to hold this stock for the purpose indicated. It imposed upon the surety the obligation to return the stock when the purpose of its deposit had been accomplished, and there was no reason for the surety to longer hold it. The terms of the written obligation to surrender the stock were that plaintiff was bound to surrender as soon as its liability upon the appeal bond was at an end, *and* (we underscore the "and" for emphasis) when evidence was produced to the surety that its liability was ended. It is clear that the surety company was under no real obligation to surrender the stock, because, although evidence which seemed at the time to be convincing that all liability had terminated was furnished, the fact is that the liability still existed. The real mistake was with respect to the ending of this liability. The mistake made was in supposing that no petition for a reargument had been filed when in fact one had been filed.

The statement of the real question involved, as we have given it, is so broad as to be of little aid in the search for the right an-

swer. It is difficult to formulate a condensed statement which will present the features which are controlling in determining the proper answer to be made. The real question can perhaps be best presented by contrasting the views of the respective parties. The strongest and clearest light in which the cause of action asserted by the plaintiff can be viewed is afforded by the statement that this stock belonged to it for the purpose of indemnification against loss. If the loss came, the stock remained the property of the plaintiff; if there was no loss, the stock was the property of Brock, and should be returned to him. The loss did occur, and it was the clear right of the plaintiff to keep the stock, and it would beyond all question have so kept it except for the mistake which was made. There is no room here for the application of the distinction, which is sometimes important, between a mistake in law and a mistake of fact. The mistake here was essentially the latter.

It is asserted to be unjust and inequitable in Brock to take advantage of the slip which was made and to keep property to which, except for this slip, he would have no shadow of claim. The position of Brock, most strongly stated, is that the stock belonged to him, and he was not under the slightest obligation, of which the law can take cognizance, to part with his property. From motives of friendship, or perhaps because he felt under an obligation to render them aid, he was willing, in order to help his former secretary and his nephew, to let them have his stock; but when, without any act or even request on his part, the stock came back to him, there was no obligation, legal, equitable, or moral on his part to renew the favor. There is a temptation in seeking the answer to a question of the kind here raised, to look for it not in the general situation presented or to find it by applying a broad general principle of law or equity, but to search for the answer through a consideration of all the particular circumstances affecting the general question. There is a more or less loose and vague code of conduct which is viewed in the phrase that every man is bound to do the proper thing or to act squarely, under all the circumstances of the position in which he finds himself, which is very appealing. It often carries a man beyond the domain of mere legal justice. His boast is that his word is as good as his bond, and he deems the standard of legal obligation as a rule of conduct altogether too low for acceptance.

In following this thought we run into the expression given as the test of the correction of mistakes, that one should return property which came to him through the mistake of another, if it would be an unconscionable act on his part to retain it. This merely changes the place of search without changing the thing of which we are in search.

It is, of course, to be desired that rules of law be just, but it is of equal importance that they be intelligible and be certain. The strongest condemnation which can be visited upon any system of laws is the vagum aut incertum condemnation, for it is to deny that the system is one of law. It is well, therefore, to settle and have clearly in mind the legal principle, and in cases of this kind it is that whenever

there has been a transaction between parties upon the faith of a state
of facts, in the absence of which it is clear (within the equitable rule)
they would not have acted, the mistake may be corrected, subject to the
limitation that no person affected by the correction will in other
respects be adversely affected. There are certain ancillary doctrines
and modifying features with which we have become familiar. One is
the doctrine of voluntary payments. Another is the mutuality of
the mistake. Still another is the element of fraud. All or none of
these may have bearing upon the question presented. Sometimes the
line of distinction is difficult to draw. Sometimes they blend into each
other. Sometimes the case is one of a simple mistake, and sometimes
it is complex and several of these elements are present. Sometimes
the transaction may easily, and sometimes with difficulty, be analyzed.

[1] The broad doctrine is, however, essentially simple and may be
simply stated. It is that mistake is a recognized ground for the exer-
cise of the equitable jurisdiction of the courts, and is just as clearly
recognized as is fraud. The correction of mistakes by doing away
with their consequences is a recognized remedy to be applied. When
it will be applied and when denied, why it will be applied in one case
and denied in another, may be easy or difficult to determine or to
state in a given case, but the general doctrine is accepted. The doctrine
is expressed in words which are really labels and are not words
which can be defined. Such a word is "fraud." What is a fraud?
It cannot be defined. No more can the word "mistake" as used in the
law. We might multiply single instances as illustrations of things to
which these labels may properly be applied, and from them get the
thought with the aid of which we can recognize fraud and mistake
when presented.

The adjudged cases may be used to serve this purpose. Those
cited in the written briefs submitted will answer the purpose as well
as any. Each may emphasize some element which is present in that
case

Reigle v. Insurance Co., 140 Pa. 193, 21 Atl. 392, 11 L. R. A. 857,
23 Am. St. Rep. 225, emphasizes the distinction between a mistake of
fact and a wrong judgment upon a doubtful state of facts. There
the mistake upon which the parties acted was that the insured was
alive when the fact was he was dead. The mistake was held to be
"a mutual mistake of fact," against the consequences of which equity
would grant relief. The decree of the court below and its reversal
by a divided court afford a good illustration of the distinction made.

Dambmann v. Schulting, 75 N. Y. 55, was based upon the distinc-
tion between a mistake of fact and the exercise of bad judgment with
respect to an unknown or doubtful state of facts. It is much the same
distinction which gamblers make between a fair and an unfair bet.

Cases of reformation of deeds or written contracts, such as Wil-
liams v. United States, 138 U. S. 514, 11 Sup. Ct. 457, 34 L. Ed. 1026,
Williams v. Association, 197 Fed. 500, 118 C. C. A. 1, and numerous
other cases, afford good illustrations of the kind of mistake against
the consequences of which relief will be afforded by courts of equity.

This line of cases goes to the very heart of the instant case, carry-

ing, as the cases do, the essential thought that if it had not been for the mistake that which was done would not have been done.

United States v. Barlow, 132 U. S. 271, 10 Sup. Ct. 77, 33 L. Ed. 346, is not under its facts in point, but the discussion of the general principles of law (aside from any acts of Congress) involved is helpful as a recognition of certain elements in mistake cases. One is that when parties deal with a consideration in view when the fact is that none exists, moneys paid may be recovered back on the theory of failure of consideration. The other is that property parted with upon the faith of the existence of a specific fact which entitled the receiver to have the property may be recovered if the fact be otherwise than as believed to be, and if the party parting with the property would not have parted with it had the true state of the facts been known.

[2] This latter principle has direct application to the instant case, and supplies us with the guide to the correct answer to the question now presented. Although, as has been said, the equitable doctrine with which we are concerned cannot be formulated in a phrase, the doctrine itself possesses certain elements which can without difficulty be recognized. It involves as an essential element the presence of a mistake. It further must be the kind of a mistake which is called a mistake of fact. This is not to distinguish it from a misconception of the law applicable because the law of the case may enter into the act which is the outcome of a transaction as a fact. It is rather to distinguish between the mistake of fact which moves the minds of the parties to act and error of judgment in the exercise of the judgment of the parties upon the facts before them. The mistake must be mutual." This latter word, although the best which has been found to express this particular phase of the thought, is not an altogether satisfyingly accurate one and is accurate only in a sense. It is called mutual not to express the thought of reciprocity and to distinguish it from a mistake which is the common mistake of both parties as we distinguish between mutual and common friends, because the mistake in this sense may not be either mutual or common. There is, however, something of the thought of a common mistake because the same mistake must affect both parties, and something of the thought of reciprocity because out of the mistake there must arise a right and a reciprocal duty. These elements are really indirect, and appear rather from the result than the transaction itself. The mistake, as we have said, may be neither mutual nor common in the strict sense, because it may be wholly the mistake of one of the parties, and the other be wholly ignorant both of the fact upon the faith of which the other has mistakenly acted and that the other has acted upon such an understanding of the fact situation.

The thought we are attempting to express may be best expressed as follows: If a man, under a mistake of fact, paid money to another which, under the facts as he understood them, should have been paid, but under the real state of facts should not have been paid, and the payment was made solely because of the mistake, and if the receiver knew the real state of fact and knew of the mistake of the payer, and if, at the time and under the circumstances, it was the duty

of the receiver to disclose what he knew, it is conceded that the money could be recovered. It might be said that in the given case there would be such a fraud as would found a cause of action. Mere mistake, however, may afford a ground of equitable relief as well as fraud. Take the same case and eliminate the knowledge of the receiver, and thus all elements of fraud, and leave only the element of mistake. Would the payer then have a cause of action for the return of the money? The answer is that if with knowledge it was the duty of the receiver to disclose, he must return the money. He cannot justify a claim of right to take advantage of a pure mistake by pleading his ignorance of the facts.

The case of Reigle v. Insurance Co., supra, through the decree made by the court below (approved by a strong dissent), and the opinion expressive of the views of the majority of the appellate court, supplies us with a good illustration of some of the features of what we regard as the true view. As viewed by the lower court, there was an outstanding policy on the life of one whose whereabouts were unknown. Neither the policy holder nor the insurance company knew whether the insured was alive or dead. It was therefore a matter of judgment whether it was to the interest of one of the parties or the other to continue the contract for $6,000 or substitute for it another for $2,500. The parties agreed to the substitution. The fact soon afterwards became known that the insured was dead. The policy holder had made a mistake, but it was a mistake of judgment, not of fact, and the $6,000 contract could not be restored. As the case was viewed by the majority of the appellate court, it was one of the plaintiff holding a $6,000 contract upon which large annual premiums were payable which the plaintiff was no longer able to pay. If the insured was dead, there were no more premiums to be paid, and the policy holder was entitled to $6,000. If the insured was alive, the policy would be avoided unless it was exchanged for a $2,500 paid-up policy. Under the belief that the insured was still alive the exchange was made. This mistake was one of fact, and the plaintiff was held to have a good cause of action for the reinstatement of the $6,000 policy. It is to be noted that there is in the case an absence of any charge of fraud. The ruling is based upon a pure mistake. There was here a common misunderstanding, but the ruling is not made on that ground.

In re Bank (C. C.) 13 Fed. 361, and the cases there cited, supply us with an illustration of other features. Under one state of facts a man owes a debt; under another state of facts he does not owe. Influenced by a mistaken view of his debt obligation (in the fact sense) he pays; he may (if the whole situation is thus presented) be awarded the return of the money paid. If, however, this is not the whole situation, and there is a phase of it under which he might well pay despite the particular fact presented, he cannot recover a payment made. An illustration of this is where a debt barred by a statute of limitations is paid. The law would not have exacted payment, but it will not enforce its return notwithstanding the payer was mistaken in thinking he was bound to pay or with respect to any fact affecting his right to plead the statute.

Other illustrations are afforded by family settlement cases (of which Goodno v. Hotchkiss [D. C.] 237 Fed. 686, is one). The ruling is sometimes put upon the ground that whenever the receiver may in good conscience retain he will not be required to make return, and sometimes upon the ground that such mistakes are not mistakes of fact, but a mistake of judgment as to the law, or as to the legal effects of the situation presented or what is done.

A good supporting ground is that the case is not one in which it clearly appears that the sole prompting to do what was done sprang from the mistake. When this latter element is present the courts have uniformly granted relief whether the mistake be one which might well be characterized as a mistake of law, and whether one or both parties were laboring under the same mistake or not, provided only it be clear that the party seeking the relief would not have done what he did except for the mistake, and provided also, of course, that relief can be awarded without consequential injustice.

It has been urged that the plaintiff is engaged in the surety business for gain. The distinction made between the two classes of sureties, whose respective equities are contrasted, is recognized, but we do not see that the question before us is affected by this consideration. The form of the remedy sought is equitable, but the right of the plaintiff is a legal right, although springing out of equitable considerations. It is founded upon a mistake and the obligation of the defendant not to take advantage of a mere mistake.

The first impression received is likely to be one favorable to the defendant Brock. As before stated, he was under no obligation to give up his stock, and, having had it returned to him, it would naturally be assumed that he was under no greater obligation to give it up the second time than he was the first. On second thought, however, it is recognized that this assumption is unjustified. He gave his stock for the purpose of indemnity, and upon the faith of it the plaintiff paid out a large sum of money. It is clear the defendant could not ask its return, nor was the plaintiff obliged to return it. When it was returned, if the return was wholly due to a mistake, the mistake may be corrected.

Counsel for defendants, in whose hands the interests of the client are safe, put the defense solely upon the ground indicated by in effect admitting the principle, but denying its application. The defense is that the plaintiff, having the right and the power to decide what it should do, decided to give up its security. This was a voluntary act, by the consequences of which it must abide. Brock could in good conscience accept the return of his stock, and in like good conscience retain it. If, for instance, the plaintiff had thought it was safe in returning the stock because it felt sure the appeal would be sustained, or that the responsibility of the appellant was a sufficient protection, and in this belief it had surrendered the stock, such a mistake, although it proved to be a mistake, would not enable it to escape the consequences of its own voluntary act. In the view of the defendants, what the plaintiff did was to decide for itself that the decision reached by the appellate court made it safe for the plaintiff to give

up its security.  This was a conclusion which plaintiff was free to reach and to act upon, and must abide by whatever consequences flowed from its own voluntary act.  This decision, as defendants further assert, was reached before the petition for a reargument was filed, and that the filing or nonfiling of the petition could not have affected its decision.  This argument is convincing as far as it goes, and upon the fact premises upon which it is based is wholly so.  It ignores, however, the fact that the petition for a reargument was filed before the plaintiff acted, and that if it had known of the filing of the petition it is clear beyond all question of doubt that the stock would not have been returned.  The mistake as to the fact of the filing was unquestionably the sole cause of plaintiff's need for relief. It was this mistake of fact, and this alone, upon which relief is asked.

The distinction among questions of whether they are of law or of fact, and whether of fact or of inferences from facts, often lead to discussions which are academical, and are often almost purely metaphysical.  We have the same distinction between evidentiary facts and ultimate fact findings.  It is difficult at times to determine just when a theory ripens into a fact.  We have many illustrations of this in all the sciences.  A theory is advanced and is recognized as a theory. Later it is accepted as a fact.  That a mistake was made is undoubtedly a fact.  That the filing of the petition for the reargument is a fact would not be denied.  Had the fact been known, the plaintiff would not have acted as it did is a finding which cannot be refused.  The act was in real consequence, prompted solely by the mistake of thinking the petition had not been filed.  The only means of escape which the experienced counsel for defendants can devise is that plaintiff did not await the expiration of the time for filing the petition before deciding upon what it was willing to do.  This way of escape is blocked by two obstacles.  One is that plaintiff did not act until after the time limit had expired, and it is asking relief, not from the consequences of what it had decided to do, but from the consequences of what it did. The other is that it acted upon the faith of the mistaken fact that its liability upon the appeal bond had ceased, and this was as much a mistake of fact as the other.

If counsel had been asked for an opinion of whether the liability still existed, the answer would have been, that depends upon the fact of whether the appeal has been successfully prosecuted.

The conclusion reached is that plaintiff is entitled to a decree with costs.  There are several defendants, and some changes have been made by amendment and substitution.  It is also not altogether clear just what the relation of the defendant Heller to this stock is—whether the certificate is in his name or in the name of Brock.  For this and other reasons, we do not now determine the form of the decree, but grant leave to the parties to submit drafts of a decree in conformity with this opinion.  If difference of opinion arises as to the form, it will be settled by the court.