## McATEE et al. v. GARRED, Adm'x.

No, 28474.   June 6, 1939.

Monnet & Savage, Earl Sneed, Jr., and D. H. Cotton, for plaintiffs in error.

Frank Nesbitt and Nelle Nesbitt, for defendant in error.

CORN, J. This is an appeal from a judgment rendered in the district court of Ottawa county, in an action brought by W. M. Garred to cancel certain instruments and quiet title. Subsequent to rendition of the judgment Garred died and the action was revived in the name of his widow. For convenience we shall refer to the defendant in error and the deceased as plaintiff, to plaintiffs in error McAtee and the Imperial Life Insurance Company as defendants.

Plaintiff listed 1937 acres of land for sale with one Paine, at a price of $3 per acre. Defendant McAtee, an authorized agent of the company, entered negotiations with the plaintiff to trade him stock in the company for the land.

This company was incorporated in 1932, with capital stock of $50,000, comprised of 5,000 shares of a par value of $10 per share. In 1935 the company increased its capital stock to $150,000, divided into 15,000 shares of a par value of $10 each. In November, 1935, 10,000 shares of this stock were registered to be sold at $20 per share.

The evidence tended to show the defendant McAtee represented this stock to be worth $50 per share, and that it would soon be worth more. June 29, 1936, plaintiff entered into a written contract, by the terms of which he agreed to give a warranty deed to one Hinch, as trustee for the defendant. Defendant was to execute a note for $1,000, due October 15, 1936, and another note due January 1, 1937, for $500. The notes were to be secured by 30 shares of the capital stock of the company, and defendant was to transfer 82 shares of the same stock to Garred. The contract provided for the deed to be placed in escrow, consummation of the transaction depending upon approval of title to the plaintiff's land by defendants.

Title was approved and the deed delivered to defendant McAtee, who executed the notes, secured by the stock, and caused Hinch to assign 82 shares of stock, of the supposed value of $4,100, to plaintiff. Hinch and wife then executed mortgages to the company, and these were recorded August 11, 1936.

January 4, 1937, the Imperial Life Insurance Company merged with the Public National Life Insurance Company, which company assumed all the assets and obligations, claims, and liabilities of the Imperial Company. March 9, 1937, this company merged with the Republic Life Insurance Company, which company took over all assets, obligations, claims, and liabilities, including the mortgages on plaintiff's land, which had been executed to the Imperial Company by Hinch and wife.

The first note became due and defendant made no effort to pay same. Believing the stock to be valuable, plaintiff proceeded to foreclose his pledgee's lien on the stock, and it was bought in for him at the sale by his son-in-law.

Subsequent investigation by plaintiff's attorney revealed the stock to be of no value, having been passed to plaintiff, through Hinch, for $50 per share when it had been requalified to sell for only $20 per share. Having begun action to rescind the contract, the plaintiff amended his petition alleging these facts and asked cancellation of his deed to Hinch, cancellation of the mortgages from Hinch to the company, and offered to return the stock and notes, but the tender was refused.

The case was tried to the court, who rendered judgment canceling the deed and the mortgages and quieting plaintiff's title, and ordering plaintiff to return the notes and stock to defendant. Motion for new trial was overruled, and defendants have appealed, submitting three propositions, based upon eight assignments of error, as grounds for reversal of the judgment.

Under the first proposition defendants contend the trial court erred in decreeing cancellation of the instruments and return of the notes and stock, because plaintiff could not rescind, being unable to place the defendants in status quo. This argument is based upon the fact plaintiff had foreclosed and sold 30 shares of the stock pledged to him as security for payment of the notes, and 19 shares of the stock had been given to Paine as commission on the deal.

To support this argument defendants rely upon section 9500, O. S. 1931 (15 Okla.

Stat. Ann. sec. 235), and cases construing same, holding that a party seeking to rescind his contract must restore to the other party everything of value. Hence, defendants argue, plaintiff offered to restore them to their original position without being able to perform by reason of not having title to the stock, and the court therefore erred in decreeing rescission of the contract.

Without passing upon the question of the technical validity of the tender as being sufficient to place the parties in status quo when the party making the offer does not have full right to possession of the thing tendered, we hold there is no merit in defendants' contention by reason of the fact the stock was worthless and the court so found.

In Dalton v. Hopper, 74 Okla. 127, 177 P. 571, much the same situation was presented to the court as is now on appeal. Dalton sued Hopper on a note he had executed. Hopper's defense was that he had dealt with Dalton's agent, who represented to him the stock he received was of a certain value, in a sound company, when this was untrue and the stock worthless. Further, in order to discharge a mortgage, as obligated by his contract to do, Hopper alleged he had conveyed 20 acres of land to plaintiff. By reason of the fraud Hopper asked cancellation of the note and reconveyance of the land, and offered to return all the stock except $500 worth, which he had already disposed of. However, he offered to account for the value thereof.

As in the case at bar, the contention was made that Hopper was not in a position to restore all the stock and, not being able to place the parties in status quo, was not entitled to rescind his contract.

In affirming the trial court's judgment decreeing rescission of the contract this court was called upon to determine essentially the same issue we have in the instant case. In the body of the opinion, at page 129, it is said:

"The statute provides that a party must return everything of value; therefore, the pleading and the proof here brings the defendant in error clearly within the statute. And the authorities are uniform that where property is worthless, that is, where it would be of no advantage to the party against whom rescission is sought, that its restoration would be a useless requirement and an idle formality. * * *"

In Shawnee Life Insurance Co. v. Taylor, 58 Okla. 313, 160 P. 622, construing section 986, Rev. Laws 1910 (section 9500, O. S. 1931, 15 Okla. St. Ann. sec. 235), the court said:

"* * * That, as it is 'everything of value' only that need be restored, the court did not err in decreeing a rescission and cancellation of the deeds and mortgage complained of."

To the same effect see, also, 9 C. J. 1211, and Hood v. Wood, 61 Okla. 294, 161 P. 210.

The uncontroverted evidence disclosed the company to have admitted assets of $63,953.82. Liabilities on capital stock, policy risks, and other liabilities were of the same amount. Liquid assets amounted to only $5,514.21, while policies issued amounted to $779,000. Defendant himself testified the probable value of the stock would be only what it would sell for.

In view of this evidence, which was uncontroverted other than evidence to show the Imperial Company had merged with another company, and that some of the stock had been requalified to sell for $20 per share, we hold the trial court was wholly justified in finding the stock to be of no value and in decreeing rescission of the contract, even though the plaintiff did not have title to all the stock when he offered to return it to defendants.

The second proposition is based upon argument the trial court erred in rendering judgment for plaintiff on the evidence, the plaintiff having failed to prove fraud or misrepresentation of a material fact.

To sustain this contention defendants cite numerous authorities holding evidence of fraud, sufficient to justify cancellation of an executed contract, must be clear and unequivocal. This is, no doubt, the law, having been announced by this court times too numerous to require citation of authority.

The grounds constituting actionable fraud have been defined by this court as being: (1) A material, false representation knowingly or recklessly made; (2) with intention that it be acted upon; (3) plaintiff must have acted upon the same to his injury. Hembree v. Douglas, 169 Okla. 403, 37 P.2d 314; Helms v. Bulington, 180 Okla. 390, 70 P.2d 65.

It has also been held that the gist of fraudulent misrepresentation is the producing of a false impression, and the means of accomplishing it are immaterial. Wilson v. Rentie, 124 Okla. 37, 254 P. 64.

Also see Operators Royalty & Producing Co. v. Greene, 173 Okla. 388, 49 P.2d 499.

Plaintiff testified defendant told him the stock was very valuable, being worth $50 per share, and that it would soon be worth more. Also, that this was the only price mentioned to him during the negotiations. Paine testified he did not hear defendant tell plaintiff what the value was, but could not say that defendant did not make such statements to plaintiff.

Contrary to this, defendant testified he only represented the stock to be worth $10 per share; that it sold for $50 per share with policies; and that the rest of the stock sold for $20 per share. However, he admitted on cross-examination **he thought** the stock was to be requalified at $50 per share any day, but did not know of any stock selling in excess of $20 per share. **He admitted the stock was traded to plaintiff on the basis of having a value of $50 per share.**

Applying the principles heretofore set out to this case, we hold the evidence as to misrepresentation was sufficiently clear and amply justified the trial court in finding that: (1) McAtee undoubtedly misrepresented the stock as being worth $50 per share; (2) when, in fact, he knew it had par value of only $10 per share, and had been requalified to sell for only $20 per share; (3) plaintiff relied upon the false impression produced in his mind as to its value and was injured thereby.

It is important to note that, although the defendant denied telling plaintiff this stock was worth $50 per share, they traded on this basis of valuation. From this it follows conclusively that the plaintiff would not have been interested had there not been representations made to him of such nature as to induce him to believe, and justifiably so, that this stock was really of the value allowed it in computing the amount to be traded to him for his land.

The rule urged by defendants that fraud must be clearly proved, and a mere preponderance of evidence is not sufficient to sustain a judgment, Brotherhood of R. R. Trainmen v. Brown, 180 Okla. 489, 71 P.2d 742, is not applicable. However, the evidence in the case at bar discloses plaintiff was induced to trade his land for stock of the supposed value of $50 per share, when in reality it had a par value of only $10 per share, and this was known by defendants throughout the transaction. The defendants had the means of knowing such representations were untrue, and the evidence is amply sufficient to sustain the judgment for plaintiff. See Lutner v. Shoffner, 181 Okla. 271, 73 P.2d 1140.

Defendant's third contention urges error in the trial court's rendering judgment canceling the mortgages and assignments, on the ground the defendant companies were wholly innocent of fraud, having taken same for value, without any notice of the alleged fraud. The foundation for this argument is that defendant was employed by the Imperial Company to sell stock and, having admitted he acted only for himself, and being unauthorized by his principal to enter into such a contract, he acted beyond the scope of his authority and his fraud cannot be imputed to the company.

Under the evidence revealed by the record, we are unable to say either that defendant's interest in the transaction was solely personal, or that the Imperial Company was entirely innocent of his activities.

The secretary-treasurer testified the defendant had authority to solicit applications for stock, for which the company would accept mortgages in payment. With this admitted authority, defendant entered into a contract with plaintiff, **the express terms of which provided consummation of the entire transaction depended upon approval of the plaintiff's title by the Imperial Company.** Furthermore, before the contract was signed, the company had this property appraised by the company appraiser.

The stock traded to plaintiff had been transferred to Hinch, defendant's trustee, before the contract was made. The day after this contract was executed the company accepted mortgages on this land from Hinch and his wife. Then, when the deed was delivered, the company recorded the mortgages. In view of these uncontradicted facts there is no merit in defendant's contention the Imperial Company was without any notice of the fraud.

We hold the judgment of the trial court to be amply supported by the evidence. That the Imperial Company was unloading this stock by means of its agent, the defendant, and its "strawman" Hinch, is fully shown. In view of the evidence a court of equity could not have done otherwise than decree rescission of the contract and cancellation of the instruments.

Judgment affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. RILEY, J., absent.