UNITED STATES of America,
Plaintiff,

v.

E. C. PYLE and Charles Y. Pyle, dba E. C. Pyle & Son Warehouses, a Partnership, and United States Fidelity and Guaranty Company, Defendants.

Civ. No. 5738.

United States District Court
E. D. Oklahoma.

Dec. 9, 1965.

Bruce Green, U. S. Atty., Muskogee, Okl., for plaintiff.

Haskell Paul, Pauls Valley, Okl., for defendants.

BOHANON, District Judge.

This is an action by the United States of America, as the real party in interest, based upon a claim of the Commodity Credit Corporation, hereinafter referred to as "Commodity," created by the Commodity Credit Corporation Charter Act (15 U.S.C. § 714 et seq.), an agency wholly owned by the United States of America, and this Court has jurisdiction by virtue of the provisions of Section 4(c) of the Act (15 U.S.C. § 714b(c)), against the defendants E. C. Pyle and Charles Y. Pyle, dba E. C. Pyle and Son Warehouses, a partnership, hereinafter designated "Pyle," and United States Fidelity and Guaranty Company, hereinafter referred to as "Guarantor," for the recovery against Pyle and Guarantor for failure to deliver certain quantities of wheat, which Commodity had delivered to the defendant Pyle under a Uniform Grain Storage Agreement.

On June 30, 1960, Commodity and Pyle entered into a Uniform Grain Storage Agreement covering storage of wheat owned by Commodity. The defendant insuror guaranteed the performance of this contract by its Bond dated August 22, 1958.

Trial of this case was had on November 16, 1965, and based upon the evidence adduced at the trial, the stipulations of the parties made at the time of trial, and the admissions made in the pleadings, the Court finds the facts to be that Commodity entered into an agreement with Pyle to store certain wheat owned by it in certain warehouses owned by Pyle at or near Pauls Valley, Oklahoma; that Guarantor guaranteed the performance of this contract by Pyle. Under the terms of the Uniform Grain Storage Contract the defendants Pyle, as warehousemen, agreed to receive, store, and load out at its warehouse facilities grain owned by Commodity. The grain was to be stored and deemed stored on a comingled basis, and the class, grade, quantity, and quality of all said grain was to be determined on the basis of official weights and grades at the point of origin and destination since Pyle had no facilities for such determination. The defendant Pyle, as warehouseman, was to and did issue warehouse receipts specifying the quantity and quality of the grain received and was to deliver the same quantity and quality to Commodity upon surrender of said warehouse receipts. When all warehouse receipts were surrendered by Commodity to Pyle, Pyle, as warehouseman, failed to deliver 7,803.70 bushels of wheat, of the value of $17,742.-56. Further, Pyle, as warehouseman, also failed to deliver the same quality as specified on the warehouse receipts, and the difference in the value of the quality received and delivered was in the sum of $2,061.14. All of the wheat remaining in Pyle's warehouse was to be delivered to Commodity into railroad cars at Pauls Valley, Oklahoma, and no storage would be allowed after March 26, 1962, the date of the last loading order issued by Commodity.

The Court finds that the Uniform Grain Storage contract is clear and unambiguous, and sets forth clearly the terms of the agreement between the parties, and each of the parties fully under-

stood and knew the meaning of said contract. Before entering into said contract, the defendant Pyle employed a competent engineer for the purpose of planning and supervising rebuilding of defendants' warehouses for the purpose of receiving, storing, and delivering grain, and Pyle relied upon the recommendations and plans of its self-employed engineer and followed his recommendations as to the type of equipment to be used in receiving, storing and delivering wheat stored by Commodity. There was no representation or understanding between Commodity and Pyle that the equipment used by Pyle would not result in a shortage of Commodity's grain stored by Pyle. A demand was made upon all of the defendants by Commodity for the payment of the shortage in the bushels of grain and the quality of grain stored in Pyle's warehouses, and payment therefor was refused, resulting in this litigation.

The above constitute the findings of fact of the Court in this case.

The only defense tendered by Pyle and Guarantor was that the contract was entered into under a mutual mistake of fact, Pyle claiming that due to the method of delivery of grain from the warehouse to the railroad cars there was a loss of grain; that is, a certain portion of the grain was broken up when it was attempted to be delivered through aluminum tubing great distances (500 feet or more) requiring the use of propeller-type fans and motors, under high pressure, thus causing a breakdown of some of the wheat which Pyle attempted to deliver.

The Uniform Grain Storage Agreement among other provisions provides:

"Section 11(j):

Except to the extent that such liability is limited by the provisions of Sections 10 and 15 and of this Section 11, the warehouseman shall be liable as an insuror and indemnify CCC as provided in Section 13 for failure to deliver grain meeting the requirements of this section."

Sections 10 and 15 and Section 13 have no application here.

Defendant Pyle assumed all risks while the wheat was in its possession under the Grain Storage Contract, including the risk of shrinkage or operational losses. This is the very nature of a contract of insurance and indemnity and is in accordance with the specific storage agreement entered into. Having contracted as an insuror to indemnify Commodity, defendant Pyle, as warehouseman, cannot plead loss through shrinkage, moisture, or operational losses.

Respecting the right of the defendant to rescind the contract by reason of a mutual mistake of fact at the time of the execution thereof, the Court has heretofore made a finding or findings adverse to the defendant.

The general rule, according to the weight of authority, is that a party seeking rescission of a contract must act promptly and with diligence upon discovery of the fact or facts entitling him to rescind, and restore, or offer to restore, the consideration or whatever he has received under the contract. 17A C.J.S. Contracts § 439. This general rule has consistently been followed by the Federal Courts. Cf. City and County of San Francisco v. Transbay Construction Company, 134 F.2d 468 (Ninth Circuit), certiorari denied 320 U.S. 749, 64 S.Ct. 52, 88 L.Ed. 445; Lichter, et al. v. Goss, et al., 232 F.2d 715 (Seventh Circuit), and other cases. This rule has been adopted and followed and well established as legal principle by the Supreme Court of Oklahoma in numerous cases, including Hooper v. Commercial Lumber Company, 341 P.2d 596, and cases preceding the last cited case, beginning with Dalton v. Hopper, 74 Okl. 127, 177 P. 571.

In order to rescind a contract, a party must comply with the statutory rules prescribed, 15 Okl.Stat.Ann. § 235, which provides as follows:

"§ 235. Duty of Party attempting rescission. Rescission, when not effected by consent, can be accomplished only by the use, on the part

of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

"2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so. (R.L.1910, § 986)."

In the case of Hooper v. Commercial Lumber Co. (Okl.), 341 P.2d 596, 598, the Supreme Court stated, in pertinent part, as follows:

"(1) Title 15 O.S.1951 § 235 provides that party proceeding to rescind a contract must either restore or offer to restore to other party everything of value which he has received from him under the contract.

"In the case of Holcomb & Hoke Mfg. Co. [of Indianapolis, Ind.] v. Jones, 102 Okl. 175, 228 P. 968, we held:

'A party attempting to rescind a contract must comply with the statutes by offering to restore, or by restoring, everything which is of value to him or the adverse party which he has received under the contract. His failure to do so is fatal to his cause of action.'

"The plaintiffs here are attempting to recover the $1,200 paid to defendant at the time of the execution of the contract, together with interest from date of payment. The record reveals that the defendant has partially performed its part of the contract by constructing the foundation and completing a part of the frame work upon the building. There is no offer on the part of the plaintiffs either in the pleadings or during the trial to restore or reimburse the defendant for this portion of construction.

"(2, 3) On rescission of a contract it is avoided ab initio, and the rights of the parties in reference to the subject-matter of it are the same as if no contract had ever been made. Rescission places the parties in the position they would have occupied if the contract had never existed. When a defrauded party annuls a fraudulent contract and reclaims what he lost thereby, he obtains complete reparation, but he cannot both retain what he received and recover what he paid out. The reason is obvious. The contract being tainted with fraud is voidable at his option, and if he sees fit to avoid it, he can no longer enforce any part thereof, and no action can be based on the contract itself."

When a party rescinds a contract, the pleadings must affirmatively allege prompt rescission and restoration or an offer of restoration. Hooper v. Commercial Lumber Co., 341 P.2d 596–598; Nicholson v. Roberts, et al., 144 Okl. 116, 289 P. 331, holding that failure to allege restoration is demurrable; Warner, et al. v. Coleman, et al., 107 Okl. 292, 231 P. 1053; Herron v. Harbour, 57 Okl. 71, 155 P. 506; Zufall v. Peyton, 26 Okl. 808, 110 P. 773, 29 L.R.A.,N.S., 740; Pugh v. Stigler, 21 Okl. 854, 97 P. 566.

The pleadings filed by the defendant plead neither prompt rescission of the contract on the ground of mutual mistake upon discovery of the facts, nor allege restoration or an offer of restoration to plaintiff of the consideration received by the defendant under the contract. The affidavit of Robert B. Baird, Claims Officer, establishes that plaintiff has paid defendant under the contract a total consideration of $104,518.30, and Mr. Baird further states that at no time has the defendant ever made any offer or tender whatever of restoration of such consideration.

■ Defendant's failure to make any offer of restoration, and failure to allege any offer of restoration, is fatal to the defense of mutual mistake for the purpose of rescinding the contract, and plaintiff is entitled to judgment as a matter of law, notwithstanding such alleged defense.

■ For an additional reason, defendant cannot rely upon the ground of mutual mistake to rescind the contract. 15 Okl.Stat.Ann. § 235 requires that the party rescinding the contract must rescind promptly upon discovering the facts which entitle him to rescind. This is an absolute requirement, and failure to rescind promptly precludes such action. Duffy Theatres, Inc. v. Griffith Consol. Theatres, Inc., 208 F.2d 316 (Tenth Circuit), certiorari denied, 347 U.S. 935, 74 S.Ct. 629, 98 L.Ed. 1085.

■■ The defendant requested and demanded a trial by jury, which was denied. Although this is not a material issue in the case, the Court feels that it should be given some consideration. In the first place, the defense of mutual mistake of fact raises no issue for the jury, but is a question for the Court. See Alcoa S. S. Co., Inc. v. Ryan, et al. (Court of Appeals, Second Circuit), 211 F.2d 576. A mistake of fact is a recognized ground for the exercise of equitable jurisdiction. United States Fidelity & Guaranty Company v. Heller, D.C., et al., 259 F. 885, 889.

■ Although the defendant did request a trial by jury, it is quite evident from the pleadings filed by the defendant that this is not a case for a jury, but one of equitable cognizance. Defendants in their answer stated:

"Defendants hereby invoke the equity powers of the Court and offer to do equity in the premises * * "

The defendants seek equitable relief, which, as has been demonstrated by the cases cited, is not proper in this type of case. Furthermore, without burdening the question, defendants, although asking for a jury trial, set forth in their Answer no question for trial by jury, and, as a matter of fact, ask for only equitable relief.

Judgment will be entered accordingly.